# FOWLER *v.* DODGE.

### PATENTS; INOPERATIVENESS AND IMPERFECTION.

1. It does not necessarily follow that because a device is imperfect it is inoperative and therefore not patentable.
2. Where the several tribunals of the Patent Office have decided that a device is operative their conclusions will not be disturbed by this court without very cogent proof of error.

No. 124. Patent Appeals. Submitted March 17, 1899. Decided April 4, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Edmund Wetmore, Mr. George W. Rea* and *Mr. J. J. Darlington* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

This cause comes before us under somewhat peculiar circumstances, and it is the second appeal taken therein to this court. When the cause was here on the first appeal, we reversed the decision of the Commissioner of Patents, which had been in favor of Joseph C. Fowler, the present appellant; and we held that, upon the question of the exercise of due diligence, which was the principal, if not the controlling, question in the case, Philip T. Dodge, and not Fowler, was entitled to the judgment of priority of invention. And the cause was thereupon remanded to the Patent Office.

As the subsequent proceedings in the office which led up to the present appeal are assumed to have been taken in pursuance of what we said in our opinion when the cause was formerly before us, it is proper to cite what was then said. It was in the following language:

"We do not desire it to be understood by our decision that Dodge is entitled to a patent for his alleged invention. What we decide is simply that, assuming that Fowler and Dodge have made the same invention independently of each other, and that Dodge has been the first to reduce it to constructive practice by his first application for a patent, we think the question of due diligence should be settled in his favor as against Fowler. From the statements of the Commissioner and the board of examiners, the inference to be drawn would seem to be that Dodge's device is found to be wanting in patentability, and therefore that the declaration of interference was based upon mistake or inadvertence. It is true that no motion was made on behalf of Fowler to dis-

solve the interference; but, if, under the law and the rules of the Patent Office, it is not improper, after adjudication of priority of invention, to refuse a patent to the successful party in interference proceedings upon grounds that have first been developed in those proceedings, or upon grounds manifested at any time after the declaration of interference, we are not to be understood by this decision as precluding such action by the office." 11 App. D. C. 592, 600.

And it is proper also to refer to some of the principal facts of the record as they were then presented to us. It appeared that Fowler, the present appellant, but the appellee in the former appeal, was the first to conceive the invention in controversy, if invention there was; but that Dodge, the other party to the interference, being the first to apply for a patent, and thereby the first to reduce the alleged invention to constructive practice, a question of diligence was raised as between him and Fowler. The Commissioner of Patents and the board of examiners in the Patent Office had decided that question in favor of Fowler; while the examiner of interferences had held that it should be resolved in favor of Dodge. We agreed with the examiner of interferences, and awarded priority of invention to Dodge. Each party in that proceeding, however, had attacked the device of his opponent as inoperative and impracticable, and therefore as wanting in patentable novelty; and yet neither one seems to have objected to the declaration of interference in the first instance, or to have moved at any time afterward for a dissolution of the interference. And we might have been justified from this in assuming that the allegations of inoperativeness on both sides were no more than the usual tactics of parties in the Patent Office intended to throw discredit upon rival claims and rival inventions. The examiner of interferences, however, incidentally passed upon this question of inoperativeness, and held that the Dodge device was operative; and that, upon the question of due diligence, Dodge was entitled to a judgment of priority of

invention.   The board of examiners, and subsequently the Commissioner of Patents, expressed doubt as to the operativeness of the Dodge device; but they did not expressly decide the point, or deem it necessary to decide it, as they awarded a judgment of priority of invention to Fowler upon the conclusion which they drew from the evidence in the cause that there had been no want of due diligence on his part.   Incidentally, of course, they must have assumed the operativeness of the Dodge device, as otherwise there could have been no interference, and it would have been improper to render any judgment of priority of invention.

Before us the question of due diligence, which was the only one distinctly decided by the Commissioner, was the principal thing in controversy; and upon our view of that question we based our decision in the cause.

When the cause was remanded from this court to the Patent Office, it being assumed that the interference proceeding was still pending for the purpose of the determination of the operativeness of the Dodge device, a motion was made to dissolve the interference, on the ground that the Dodge device was inoperative, and therefore unpatentable; and with this motion was coupled another, in which it was requested on behalf of Fowler that the application of Dodge should be refused and a patent denied to him.   The motion to dissolve the interference was referred by the acting Commissioner of Patents to the primary examiner, in accordance with the rules of the Patent Office; and the primary examiner, in a full and elaborate opinion, considered the question of the operativeness of the Dodge device, held that it was operative and patentable, and denied the motion to dissolve the interference.   From this decision of the examiner appeal was taken to the Commissioner of Patents, and at the same time to the board of examiners.   This was for abundant caution, in view of the requirements of the rules of the Patent Office, which were supposed to leave it in doubt whether the appeal in such a case should be taken to

the board of examiners or directly to the Commissioner. The board of examiners dismissed the appeal, on the ground that none lay to them; and thereupon from this decision an appeal was taken to the Commissioner. The case was, therefore, fully before the Commissioner, whatever may have been the proper understanding of the rules. The Commissioner heard the case, and dismissed both appeals, on the ground that the decision of the primary examiner in such a matter was final under the rules of the office. From this decision of the Commissioner the present appeal has been taken on behalf of Fowler to us.

In this court a motion was made to dismiss the appeal, for the reason, as contended, that none lay in such a case; but that motion was postponed to the hearing of the appeal on its merits.

We do not deem it necessary to pass upon any of the questions of practice under the rules of the Patent Office that have been raised in this case, or upon the validity or application of any of those rules, or upon the propriety of dismissing the appeal. Under the special circumstances of this case, we will assume that the appeal fully brings before us for determination by this court the whole question of the operativeness of the Dodge device and its patentability.

Apart from the motions which have been mentioned and the action thereon had in the Patent Office, the substance of the record now before us consists of the opinion of the examiner on the question of the operativeness of the Dodge device and his exhaustive discussion of that subject, and of the criticism thereon of the counsel for Fowler. But we may assume that the record, also, which was before us on the previous hearing, is yet before us and may be referred to on this question of operativeness. We have no facts, no testimony, in the case other than the facts and the testimony contained in that original record, upon the basis of which the doubt of inoperativeness was suggested, but which served no farther than to create a doubt. But we have here now—

and it is the only thing farther which we have in the case—the opinion of an expert who has thoroughly examined the matter, and who, upon such examination, has emphatically declared the device to be operative.

The examiner, it is true, has pointed out several imperfections in the device, which should be remedied in order to make it entirely successful; and counsel for the appellant, in his criticism of the opinion, has ingeniously elaborated these imperfections, and made the most of them. But, as the examiner has pointed out, and as the courts have repeatedly held, there is a great difference between imperfection and inoperativeness. It is well known that many of the greatest inventions were, from our present standpoint, extremely crude in their inception; and it is not always easy to recognize the original conception in the present perfected device. The telegraph, the telephone, the steam engine, the printing press, not to mention others which may be readily recalled, are in this category; and yet the great original conception was not the less patentable because it was not fully developed.

It would serve no good purpose to supplement the opinion of the primary examiner in this case with another opinion on the same question of operativeness. The controversy is reduced to a very narrow compass. The examiner of interferences, in the first instance, held the device to be operative. The board of examiners and the Commissioner suggested, rather than expressed, doubt, but proceeded to decide the cause upon the assumption of operativeness. Now again it has been referred to the proper officer, the expert of the office, to examine into this precise question anew; and he holds the device to be operative. Certainly, the preponderance of testimony is in favor of the operativeness of the device; and it is not usual for the courts to disturb the conclusions of the Patent Office upon any such question as that without very cogent proof of error. We find no such proof in this case.

As we have stated, with the motion filed in the Patent Office by the appellant Fowler to dissolve the interference, there was also filed a motion on his behalf for the issue of a patent to him.   This latter motion, of course could only be allowed, if at all, in the event that, upon the other motion, the device of Dodge should be found to be inoperative, and also upon the assumption, which has not been further considered, that the device of Fowler himself was operative; for its operativeness was controverted in the original proceedings as well as that of the Dodge device.   But if the Dodge device is operative, as the examiner has held, and we now hold upon the showing that has been made, but without intending to preclude parties from any other proceedings to which they may think proper to have recourse, then the ground wholly fails for the motion to have a patent issue to Fowler.

In the view which we take of this case, it is immaterial whether the motion to dismiss the appeal be allowed, or whether the decision of the Commissioner of Patents, regarded as a decision of the case on the merits, be affirmed. But it seems to be more appropriate under the circumstances that the latter course be pursued.   We therefore *affirm* the decision of the Commissioner of Patents in the premises.

The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents, according to law.   *And it is so ordered.*