H. WENZEL TENT & DUCK CO. v. WHITE STAG MFG. CO. et al.

No. 13132.

United States Court of Appeals Ninth Circuit.

Oct. 30, 1952.

Orme E. Cheatham, Portland, Or., Edmund C. Rogers, St. Louis, Mo. (Buckhorn & Cheatham, Portland, Or., and Kingsland, Rogers & Ezell, St. Louis, Mo., of counsel), for appellant.

Samuel B. Weinstein and L. R. Geisler, Portland, Or., for appellee.

Before STEPHENS, HEALY and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The H. Wenzel Tent & Duck Co., hereafter called plaintiff, brought suit against the White Stag Manufacturing Co., hereafter called defendant, for allegedly infringing plaintiff's patent on a self-cooling cotton canvas water bag. Defendant interposed by way of defense evidence as to its claimed manufacture and sale to the public of a substantially identical product more than one year prior to plaintiff's original patent application. The district court held that since 1940, more than one year before plaintiff's original filing date, there had been "a public use and a disclosure to the public that cotton fabric treated with paraffin to restrict the passage of water through the fabric without rendering the fabric entirely waterproof could be used in place of flax canvas in making self-cooling water bags", and that plaintiff's patent had been anticipated by prior public use and was "inadvertently granted". Judgment was awarded to defendant, and plaintiff appealed.

It has long been known that water in a porous container can be kept cool by the limited seepage and evaporation of the water from the outer surface of the container. A flax bag soaked for twenty-four hours has proved to be a satisfactory self-cooling water bag since the seepage rather nicely equals the evaporation necessary for cooling. With the outbreak of war in Europe in 1939, it became increasingly difficult in the United States to obtain flax. Because of such difficulty the Hirsch-Weis Canvas Products Co., defendant's predecessor, manufactured and sold to the public during 1940 and 1942 several thousand nonflax bags made of 13-ounce cotton duck treated with paraffin wax. The treated fabric used was called "Raintest" and was water-repellent though not waterproof. In a water-repellent fabric, like one made of flax, interstices are not entirely closed but are restricted, allowing limited seepage which, upon evaporation, cools the retained water. There is evidence that the "Raintest" bag was discontinued in 1942 because the War Production Board refused the allocation of cotton for water bag use.

On September 24, 1941, more than one year after the sale of the "Raintest" bags had begun, plaintiff filed an application for a patent on a self-cooling cotton water bag. Plaintiff's application proposed that cotton canvas be treated with a paraffin wax emulsion bath. It was claimed that this process would permit sufficient evaporation to keep the water in the bag cool; and that since paraffin would be used as the agent to restrict the flow of water, there could be no objectionable aroma or souring of the water. 18-ounce duck was recommended as the most satisfactory weight.

No patent was issued on plaintiff's 1941 application.

In March, 1943, the Rohm & Haas Co. at the request of the Army Quartermaster Depot independently developed a self-cooling cotton water bag. Under the Rohm & Haas process the fabric was treated with a resin which satisfactorily restricted the pores without actually closing them, and this processed bag was in one respect more satisfactory than plaintiff's paraffin wax treated bag. Paraffin wax has a relatively low melting point. Therefore after a bag so treated was once exposed to heat the paraffin would soften and allow the pores of the bag to open and enable the water to seep through at an increased rate. However, when the temperature dropped the wax would not retract. Resin, on the other hand, has a relatively high melting point and the bag treated with it would more closely equate the seepage and evaporation. The army used the Rohm & Haas bag in 1943 and 1944. It was never patented.

On April 25, 1945, plaintiff filed a second application for a patent which was a "continuation-in-part" of the first application. By filing a "continuation-in-part" instead of an entirely new application, plaintiff sought to take advantage of the earlier filing date of the first application. In its 1945 application plaintiff claimed that a self-cooling cotton water bag could be produced if the cotton fabric was treated with either "a liquid dispersion [i.e., solution] of a substance that is amorphous,[1] water insoluble, relatively hard at low temperatures, relatively soft at high temperatures, and increasing in softness as the temperature rises," or "a dilute emulsion" of a substance of the same description or "a dilute emulsion of a paraffin wax". In general, plaintiff claimed that the cotton duck could be used to make self-cooling water bags if the fabric were woven to permit uncontrolled seepage, and then impregnated with paraffin or an insoluble plastic to regulate the seepage. The United States Patent Office granted Patent No. 2,467,792 on a self-cooling cotton water container to Fred H. Wenzel and Herman F. Wenzel, plaintiff's assignors, on April 19, 1949.

In 1948 defendant again put a treated cotton water container on the market. Defendant states that this bag was made necessary by a sharp increase in the price of flax in 1947. Defendant's 1948 cotton bag was not made of the "Raintest" material which had been used in 1940 to 1942. Instead, a 14.9-ounce duck treated by the Buckeye Fabric Finishing Company of Ohio was employed as more satisfactory than the "Raintest" material. And in 1949, defendant changed to a treated cotton fabric made by the Champion Textile Finishing Company of Chicago. Defendant has continued to manufacture and market a self-cooling cotton water bag of the "Champion" material to date. It is this bag which plaintiff alleges infringes its patent.

Defendant responded to plaintiff's charge of patent infringement with the contention that a self-cooling water bag of cotton impregnated with paraffin is not patentable because such a product was in public use for at least one year prior to the date plaintiff filed its original patent application, and a resin-impregnated bag was in public use more than one year prior to plaintiff's amended application. Plaintiff contended that there had been no "prior use" within the conditions of patentability laid down by Congress,[2] because the "Raintest" bag had

1. Referred to as "plastics" elsewhere in the patent application.
2. "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, or who has invented or discovered and asexually reproduced any distinct and new variety of plant, other than a tuber-propagated plant, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may,

been an unsuccessful "fugitive episode" which had been abandoned. Plaintiff further contended that defendant's present bag is not the same as the "Raintest" bag, but is the same as plaintiff's bag.

■ The issuance of a patent to an individual bestows upon him a monopoly protected by the power of the United States in the exploitation of the patented products. Such special privilege would be unwarranted were it not for a specific provision in the United States Constitution giving Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries". Art. I, § 8, Cl. 8, U.S.C.A. In the exercise of this Constitutional power, Congress has set forth certain reasonable conditions which must be met in order for an individual to obtain a government protected monopoly. To be patentable an invention or discovery, or improvement thereon, must be "new and useful" must not have been "known or used" in the United States or "patented or described in any printed publication" in the United States or foreign country more than one year prior to the application, and must not have been "in public use or on sale in this country" for more than one year prior to the application nor "proved to have been abandoned".[3] The principal issue raised in this case is whether or not the "Raintest" bag was substantially identical to plaintiff's bag in its objective and manner of operation, and thus amounted to an anticipation and public use of plaintiff's patent.

■ Once letters of patent have been issued it is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent, and of its novelty." Cantrell v. Wallick, 1886, 117 U.S. 689, 695, 6 S.Ct. 970, 974, 29 L.Ed. 1017; Bianchi v. Barili, 9 Cir., 1948, 168 F.2d 793. And it falls upon the party raising the defense of prior use in an action for infringement of a patent to prove beyond a reasonable doubt that the patent has been anticipated. Bianchi v. Barili, supra.

In this case it is conceded that the "Raintest" bag was in public use more than one year prior to plaintiff's original application. However, plaintiff contends that the "Raintest" bag was so unsuccessful that it could not validly be considered as an anticipation of plaintiff's patented container. For, as this court said in Carson v. American Smelting & Refining Co., 9 Cir., 1926, 11 F.2d 766, 770, " * * * 'It is incumbent on the defendants, therefore, to show that the prior use which is set up was so far appreciated at the time, and adopted or followed, as to create a well-understood, if not an established, practice, capable at any time of being resorted to, and not something incidental, indefinite, and fugitive, which is now hunted up and brought forward simply for the purpose of defeating the patent.' "

In its argument plaintiff emphasizes its contention that the "Raintest" bag was just such an "incidental, indefinite and fugitive" device as would not meet the burden incumbent upon defendant of establishing prior public use. To begin with, there were two different processes used in making the "Raintest" fabric. There was the so-called soft-finish whereby melted paraffin wax and petroleum (i.e., vaseline) was squeezed into the fabric. In the hard finish process a wax emulsion, water and aluminum acetate were applied to the fabric. Both treatments gave the same appearance and performance. Both the hard and the soft finishes were used to produce a water-repellent material which restricts, but does not prevent, the flow of water through the fabric. Therefore, the "Raintest" bag produced by defendant in 1940 permitted controlled seepage and thus operated in a manner similar to that claimed in plaintiff's patent. Moreover, there was evidence that laboratory tests performed on plaintiff's and the "Raintest" bag showed that while plaintiff's bag gave a superior performance, both bags were substantially similar

upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor." Title 35 U.S.C.A. § 31.

3. Title 35 U.S.C.A. § 31. See full text in footnote 2, supra.

in objective and results achieved. That is: Both bags were of treated cotton which kept the water therein cool through the process of controlled seepage and evaporation; and both bags used paraffin wax as the agent whereby the pores in the woven cotton were constricted. The plaintiff's suggested use of plastics rather than wax, in its 1945 amended application, appears to have been anticipated by the public use of the Rohm & Haas resin bag in 1945.

The idea of impregnating cotton duck with paraffin to control the amount of seepage in order to keep water cool by evaporation as a flax bag would do embodies that "spark of genius" which renders an invention or discovery patentable. The "Raintest" bag in 1941 was such a device, and as such was patentable. When the defendant failed to patent his discovery within one year after the bag had been sold commercially, the wax-impregnated cotton self-cooling water bag had been abandoned as a patentable device by either the inventor or anyone else; and the discovery had been dedicated to the public domain. Dennis v. Pitner, 7 Cir., 106 F.2d 142, 150; Elements of Patent Law, Fred H. Rhodes, 1949, p. 34. Thus, plaintiff could not take advantage of defendant's failure to patent the "Raintest" bag by patenting its own subsequent discovery whether arrived at independently or not.

If the "Raintest" bag had been developed after plaintiff's bag, it would have infringed plaintiff's patent. But since the "Raintest" bag was developed first, it anticipates plaintiff's claims, and makes them unpatentable. See Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 1949, 178 F.2d 794.

Plaintiff urges that the fact that the "Raintest" bag was discontinued in 1942, after two years of public sale, indicates its commercial failure and lack of usefulness. Under plaintiff's reasoning it would follow that since the "Raintest" bag was not useful, it was not patentable, and therefore not an anticipation which would preclude the patenting of plaintiff's subsequent bag. As we have hereinbefore stated, there was evidence that the "Raintest" bag was discontinued because of the difficulty in obtaining allocations of cotton duck for water bags during the war. Discontinuation of the manufacture of any article does not necessarily mean that the article was a failure or that it failed to serve its purpose. Brush v. Condit, 132 U.S. 39, 10 S.Ct. 1, 33 L.Ed. 251. There was substantial evidence to support the district court's conclusion that the "Raintest" bag was a useful anticipation of the use of paraffin impregnated cotton self-cooling water bags. Furthermore, laboratory tests indicated that the "Raintest" bag performed its function substantially as well as the post-war cotton water bags had done. The fact that the "Raintest" bag may have been less efficient than later developed bags does not detract from its novelty, usefulness and patentability. Fowler v. Dodge, 1899, 14 App.D.C. 477.

Plaintiff argues that the "Raintest" bag must have failed to function satisfactorily since defendant turned to "Buckeye" material, then to "Champion" material when it resumed cotton bag production in 1948. However, the changes do not require the conclusion that the "Raintest" bag was a failure; and the different material, though made through essentially the same process as was used in "Raintest", was superior thereto. The "Champion" material which the defendant finally selected is a 14.9-ounce cotton duck treated with a solution of highly refined paraffin wax, micro-crystalline, resin, fungicides and solvent (petroleum naptha). The Champion Company had used this process in making water-repellant material for over fifteen years, although defendant was the first to use the "Champion" material for self-cooling water bags.

In 1947, defendant circulated an advertisement in which the following language appeared: "Only bags made of flax and jute duck will keep water cool. Ordinary cotton duck must be treated to prevent excessive leaking; then there is no refrigerating action or other means of maintaining coolness." This statement was, of course, admissible as evidence that defendant did not consider its "Raintest" bag a success. However persuasive this admission by the defendant against its own self-interest might have been, it was not con-

clusive. Charles Beek testified that he joined the defendant company in 1944, two years after the "Raintest" bag had been discontinued and, as advertising manager, he had approved the statements above quoted, but upon learning that the statements in the circulars "were not entirely true" he withdrew them.

The district court concluded that the defendants had met their required burden of proving that plaintiff's patent had been anticipated by the public use of self-cooling water bags made from cotton canvas material treated with paraffin or resin (i.e., amorphous plastics).[4] We do not find the trial court's conclusions "clearly erroneous". United States v. United States Gypsum Co., 1947, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Affirmed.

4. The "Raintest" bag and the Rohn & Haas bag.