In re ROBERTS.

(Court of Appeals of District of Columbia. Submitted January 19, 1920. Decided March 1, 1920.)

No. 1288.

1. PATENTS ☞109—NEW APPLICATION BY SOLE INVENTOR SHOULD BE TREATED AS CONTINUATION OF APPLICATION BY JOINT INVENTORS.

Where, by mistake and without fraudulent intention, a patent application filed by two inventors embraced an invention of which one of them was sole inventor, a new application, filed by him, should have been treated as a continuation of the original application, and hence not barred by an interfering patent issued more than two years prior to its filing.

2. PATENTS ☞109—APPLICANT SEEKING TO CORRECT MISTAKE MUST ACT WITH DILIGENCE AND SHOW GOOD FAITH.

A patent applicant, seeking to correct his own mistake in filing an application jointly with another, must act with reasonable diligence and assume the burden of establishing his good faith.

Appeal from a Decision of an Assistant Commissioner of Patents.

Patent application by Webster M. Roberts. From a decision of the Patent Office, adverse to the applicant, he appeals. Reversed and remanded.

H. A. Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., of Dayton, Ohio, on the brief), for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

ROBB, Associate Justice. Appeal from a decision of the Patent Office refusing to treat the application herein as a continuation of a joint application embracing the same subject-matter, theretofore filed by appellant and another under a mistake of fact.

[1] On June 24, 1912, the present applicant and Park D. Roberts, his son, filed an application embracing, not only subject-matter to which they jointly contributed, but, as well, the subject-matter involved in the present application. An interference was declared between this joint application and a reissue application of Mr. F. A. Bruckman, and dur-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing the taking of testimony it devloped that the son had nothing to do with the particular subject-matter of the present application. Thereupon priority as to this subject-matter was awarded Bruckman by the Patent Office on the ground that the Roberts were not joint inventors. Just when the final decision was made does not appear, but it does appear that the present application was filed in October of 1917, as a continuation of the former joint application. The drawings, specification, and claims of the present application were copied from the former. In other words, as to the subject-matter involved the present application is in substance the former application; but the Patent Office declined to consider the present application as a continuation of the former joint application, the result being that the Bruckman patent, having issued more than two years prior to the filing of the present application, became a statutory bar to its allowance. The question for our consideration, therefore, is whether, in a case like the present, where it appears that a joint application has been filed through mistake or inadvertence and without fraudulent intent, the sole inventor, one of the joint applicants, is estopped from taking any advantage of that application.

The Examiners in Chief conceded that the result of the Patent Office ruling might be to deprive the applicant of an opportunity to contest the issue of priority, to procure a patent or assert his right thereto, and to permit his adversary "to go hence with a patent the right to which, and the validity of which, the Patent Office will have failed to determine beforehand." The Board, however, felt constrained to follow what it conceived to be a line of decision in the Patent Office to the effect that a sole applicant is a different entity from joint applicants, and hence that a sole application may not be considered in any circumstances as a continuation of the old. The Assistant Commissioner relied upon the prior decisions of the Office, and upon certain decisions of this and other federal courts, to which we will refer later.

In Godfrey v. Eames, 1 Wall. 317, 17 L. Ed. 684, it was ruled that, where an applicant for a patent elects to withdraw his application for the purpose of filing a new application, the two applications are to be considered as parts of the same transaction, constituting one continuous application. The court was influenced by the fact that the two applications covered the same subject-matter, or that there was identity of subject-matter. In Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 32 L. Ed. 952, where an application had been rejected three times, and a new application was not filed until several years thereafter, it was held that the new application, being for the same invention, was a mere continuation of the original application, and not a new and independent one.

While these decisions involve a somewhat different question than that before us, they evince a purpose to consider substance rather than form, to the end that the real inventor may receive recognition. That there are no insuperable obstacles in the present case is apparent from a perusal of former rule 32 of the Patent Office, which was promulgated in 1897 and provided that new parties might be added to

a pending application of joint inventors, that some of the parties might be dropped where all consented in writing, "and where the nonjoinder or misjoinder was by mistake and without fraudulent intent." The fact that this rule was subsequently repealed does not militate against its consideration here, for it is applicable to the question before us. Section 4888, R. S. (Comp. St. § 9432), requires an inventor to file an application clearly pointing out his invention, but such was the law when the decisions were rendered in Godfrey v. Eames and Smith v. Goodyear Dental Vulcanite Co.

The joint application of Roberts and Roberts answered every requirement of this section, except that one of the applicants, as it subsequently developed, did not contribute anything to the subject-matter here involved. All that was sought in the new application was the elimination of one of the joint applicants, to whom credit mistakenly had been given for the particular invention involved. There was identity of subject-matter, and it is difficult to perceive any reason for not permitting the rectification of such a mistake by an amendment eliminating the superflous applicant. Surely, if such an amendment would have been proper, then the filing of what in substance and effect was a duplicate application by the sole inventor should have been regarded as a continuation of the former application. When one joint applicant admitted that this particular subject-matter was the sole invention of the other applicant, to all intents and purposes the application as to this subject-matter was the application of the sole inventor, who still was a party to the proceeding. The Patent Office, in our view, has failed to give proper weight to the fact that there is identity of subject-matter here, that there is no conflict of interest, and that the second application is filed merely to correct a formal error.

The Assistant Commissioner cites our decision in Lemp v. Randall, 33 App. D. C. 430, in support of his conclusion; but the question here in issue was neither involved nor discussed in that case. It there was ruled that the Patent Office should have determined whether the joint applicants were in fact joint inventors, for if it appeared they were not there would be a failure of parties; that is to say, a finding that joint applicants are without standing to contest the question of priority with another applicant destroys the basis for an award of priority. In that case the joint applicants insisted that they were joint inventors, and the court so found.

Much reliance also is placed upon the decision in American Casting Machine Co. v. Pittsburgh Co., 237 Fed. 590, 150 C. C. A. 472. While the joint application of Uehling, Miller, and Scott in that case was pending in the Patent Office here, Scott caused the invention to be patented in Great Britain. Subsequently the joint application was abandoned. More than seven months after the filing of the British application, Scott filed a sole application in this country and obtained a patent thereon. It was held that this patent was void because of the British patent. The court referred to the disclaimer that the patent in suit was a division of the abandoned application. It thus appears that after a foreign patent had been obtained on behalf of the joint inven-

tors by one of them, and the joint application for the same invention had been abandoned here, one of the joint applicants filed what was characterized by the court as "a hostile and independent application" for the same invention. Of course, the court ruled that, in such circumstances, the application must stand "on its own ground." Here, however, there is no such inconsistency. No patent has been obtained under the former joint application, which the joint applicants concede was formally defective. To prevent a possible failure of justice, the present application should have been considered as a continuation of the abortive application. As already suggested, we perceive no reason why the mistake could not have been rectified by a simple amendment, but in any event the sole inventor should not be deprived of his day in court by the raising of artificial barriers against him. He claimed his invention, and, through mistake, gave his son credit where no credit was due. The elimination of the son ought not to deprive the father, the sole inventor, of the benefit of his original application; and we so rule.

[2] It perhaps is unnecessary to add that a party who seeks to correct his own mistake must act with reasonable diligence, and also assume the burden of establishing his good faith.

The decision is reversed, and the case remanded for further proceedings in harmony with this opinion.

Reversed and remanded.