## SHRECKHISE v. RITCHIE et al.
### No. 5552.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1947.

John W. Malley, of Washington, D. C. (Clarence M. Elder, of Staunton, Va., and William M. Cushman and Cushman, Darby & Cushman, all of Washington, D. C., on the brief), for appellant.

Glenn W. Ruebush, of Harrisonburg, for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit involves the validity and the infringement of United States Patent No. 2,341,392 issued to George W. Shreckhise on February 8, 1944 on an application filed April 10, 1940, for apparatus for coating typewriter ribbons. The District Judge found for the defendants on both questions and dismissed the bill of complaint. We consider only the question of validity since we are in accord with the Judge's opinion on this point, Shreckhise v. Ritchie, 67 F.Supp. 926.

The decision below is based on the finding that Shreckhise was not the sole inventor of the device as he claimed to be, but only one of several men whose joint efforts contributed to the solution of the problem with which the group was concerned. They were striving to design an apparatus for coating the back side of typewriter ribbons with a solution such as cellulose acetate so as to form a relatively hard protective surface which would confine the ink within the ribbon and serve as a strong and durable medium to receive the impact of the keys and thus prolong the ribbon's life. The defendant Humes, who was engaged in the business of repairing typewriters and selling typewriters and typewriter supplies, had perfected such a solution in 1936 and in 1939 received a patent on it. He was associated with the defendant Ritchie who had considerable experience as a salesman in the typewriter field, and it was understood that they were to share the profits which might result from the patenting and sale of the solution. However, they did not have sufficient means to finance the enterprise and therefore in June, 1937, they enlisted the aid of Shreckhise, a nephew of Ritchie. Shreckhise was not a man of mechanical training or experience, but had been a farmer and a manufacturer of chicken coops. He entered into the group and it was agreed that he was to have a share in the business which apparently amounted to one-third.

Humes had constructed a device for the application of his solution to the ribbon. The apparatus consisted of a tank to contain the solution, with a small aperture in the bottom of the tank through which the solution was allowed to drip by gravity upon the ribbon as it passed beneath the tank in its journey between two reels which were mounted on opposite sides of the tank and were operated by hand. It was recognized by all that the Humes apparatus was too slow and inefficient for commercial operation, and accordingly in the fall of 1938, the three men began the search for a more effective device. One Edward Wright, now deceased, a man of

mechanical skill, also assisted. Experiments and trials were made at Hume's place of business at Harrisonburg, Virginia, which resulted before the end of the year in the construction of a machine embodying the elements described in the patent. Later, to facilitate commercial production, the machine was set up in a rented building at Weyer's Cave, Virginia, where Shreckhise resided. Certain sketches were made and certain models were constructed at Shreckhise's direction at Muncie, Indiana. Finally in January, 1939, Shreckhise caused a framework to be constructed at Weyer's Cave which was taken to Humes' place of business at Harrisonburg and successfully operated. Later it was removed to Weyer's Cave.

The apparatus covered by the patent in suit does not apply the solution downwardly by gravity, but discharges the solution upwardly to the undersurface of the moving ribbon so as to apply a thin coating uniformly. The solution is caused to ascend from a supply tank through a pipe by a spiral or worm pump and proceeds then through a passage to a nozzle through which it comes into contact with the undersurface of the ribbon. During the operation the ribbon is passed under a roller or guide bar which is mounted at about the point where the solution is applied and thereby the ribbon is kept under proper tension and held close to the nozzle from which the solution emerges. The excess of the solution is scraped from the ribbon after it is coated by the edge of a blade or chisel and allowed to drop back into the tank. The combination of these various elements, the tank, the worm, the passage, the nozzle, the roller and the chisel, brought about the desired result and undoubtedly made up an apparatus far superior to the original device of Humes and turned what had been a faulty operation into an efficient and successful one, accomplishing the end in view.

The difficulty with the plaintiff's case is that the proof shows that he was not the sole inventor but at best only one of the contributors to the patented device. There is indeed evidence that Shreckhise, through his cash outlay and his business ability, contributed much to the successful outcome. There is also evidence that differences developed amongst the partners and that Humes took little part in the activities after the middle of 1939; and also that Ritchie cooperated with Shreckhise in the preparation of the patent application in the latter's name and signed certain papers indicating that Shreckhise was the inventor. After the issuance of the patent Ritchie himself fell out with Shreckhise and in 1945, joined Humes in the operation of a machine which Humes had built. These operations formed the basis of the infringement charge in the suit.

There is testimony by Shreckhise himself that he alone designed the combination. However, the testimony as a whole does not bear out this contention and we find no reason to depart from the well established rule that the findings of fact of the trial judge are binding on us unless clearly wrong. Nor was there error in the Judge's conclusion of law that a patent issued to one person for something jointly invented by several persons is void. On these points the Judge made the following statements in his opinion:

"Taking the evidence as a whole I am of opinion that it clearly disproves the assertion of Shreckhise that he alone conceived the solution of these difficulties, or of any essential element of the completed machine. It is clear that all of the parties were working together trying to perfect the device. As any obstacle or imperfection arose they discussed it among themselves and made suggestions for its correction. From the testimony it is difficult to attribute to any individual the credit for the final result. The very fact that they were all working together in an informal way, pursuing a common purpose and discussing and suggesting among themselves the means of accomplishing it, is no doubt the reason why the witnesses, with the exception of Shreckhise, are somewhat indefinite as to the part which each played. However, it does appear from the evidence that Edward Wright suggested the use of the spiral or worm as the means of obtaining the pressure on the coating solution, and that the use of the cylindrical rod to hold the ribbon while being coated first occurred to Ritchie. Who proposed the

use of a nozzle to spray the coating onto the ribbon does not appear. Seemingly it was accepted by all of them as an obvious means, which it undoubtedly was. As to the blade or scraper for removing the excess solution from the ribbon and for which Shreckhise also claims credit, there was no novelty or invention involved in the use of this. The original hand-operated machine which Humes had used while developing the coating solution contained a device for this purpose. The scraper on the completed machine was merely an adoption of the same thing in somewhat different form."

"No doubt Shreckhise had an active part in developing this ribbon coating machine to the point of its practical commercial use; but it was not the part of an inventor. He probably had less to do with any inventive activity or in bringing about the mechanical perfection of the machine than any of the others. He was not a man of mechanical training or experience as were both Humes and Wright. His occupations had been that of a farmer and a manufacturer of chicken coops. His interest in the enterprise arose from the fact that he had expended some money in obtaining the patent on the coating solution and otherwise and he naturally desired to recoup this as well as to be a beneficiary in a possibly profitable enterprise. He undoubtedly took an interest in and was active in the common effort. His eagerness to acheive practical results probably served to spur the efforts of his companions. It was he who, with the knowledge and acquiescence of his partners, took the crude models to the machine shop to be worked into shape, and it was he who, on completion of the machine, suggested and made the arrangements for establishing the site of operations at Weyer's Cave. But there is no evidence, except his own statement to that effect, that he is the inventor of this machine or any essential part of it. The evidence is distinctly to the contrary."

"It is well settled that (aside from questions of assignability) patents can be granted only to the true inventors of the invention and must be issued in the name of all of the inventors; that a patent issued in the name of joint patentees, when in fact one of them is the sole inventor, is void; and similarly, when a patent is issued to one person for something which was jointly invented by several the patent is invalid. Walker on Patents (6 Ed.) Sect. 89; 40 Am.Jur. 576; Arnold v. Bishop, Fed.Cas.No. 552 and No. 553; Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; American Electrical, etc., Co. v. Newgold, C.C., 108 F. 957, 959; Thomas v. Weeks, Fed.Cas.No. 13,914; Welsbach Light Co. v. Cosmopolitan, etc., Co., C.C., 100 F. 648; Ross & Co. v. Wigder, 3 Cir., 290 F. 788; McKinnon Chain Co. v. American Chain Co., 3 Cir., 268 F. 353; Larson v. Crowther, 8 Cir., 26 F.2d 780, 789."

■ There is no basis for the appellant's additional contention that the District Judge determined the question of inventorship by considering only the individual elements of the machine and leaving out of account the combination of these elements which constituted the invention. It is true that the Judge pointed out the evidence which indicates that Shreckhise did not originate the various elements that entered into the combination; but this was done to show that Shreckhise was not the originator of the invention himself. The evidence clearly shows that from the beginning the parties were trying to find a combination that would bring about the desired result and that to this end various experiments were tried and various elements were suggested by the several members of the group, so that the combination as well as the constituents thereof was the fruit of the joint endeavor. The findings of the District Judge make it abundantly clear that the patentee was not the originator of the search for the combination or the employer of the other members of the group entitled to make use of their suggestions and advice for his own benefit, but was merely one of the group, all of whom contributed jointly to the final result set out in the claims of the patent. Compare Frederick Iron & Steel Co. v. Sanford Riley Stoker Co., 4 Cir., 287 F. 495.

The judgment of the District Court will be affirmed.