**MERRY MANUFACTURING COM- PANY, Plaintiff,**

v.

**BURNS TOOL COMPANY and Economy Auto Stores, Inc., Defendants.**

**Civ. A. No. 7081.**

United States District Court
N. D. Georgia,
Atlanta Division.

May 24, 1962.

· Richard W. Seed, Seattle, Wash., Hamilton Lokey, Atlanta, Ga., for Merry Mfg. Co.

Semmes & Semmes, Washington, D. C., Smith, Swift, Currie, McGhee & Hancock, R. W. Crenshaw, Jr., c/o Hansell, Post, Gardner, Brandon & Dorsey, Atlanta, Ga., for Burns Tool Co. and Economy Auto Stores, Inc.

MORGAN, District Judge.

This patent case concerns the alleged infringement of two United States patents. The earlier of these patents is Patent No. 2,614,474, and it is entitled WALKING CULTIVATOR. The second of the patents, namely 2,634,666 is entitled IMPROVED EARTHWORKING WHEEL. It is further complained that the defendant has engaged in unfair competition in promoting the sales of its garden tiller.

The issues of the law suit are three in number. As to each of the patents—are they valid—in view of the state of the art and/or in view of the laws of inventorship? Secondly, if valid, are the respective patents infringed? Thirdly, has the defense engaged in competitive practices which are unfair and in violation of the lawful rights of the plaintiff?

Plaintiff has alleged infringement of Claims 1, 2, 7, 8 and 9 of Merry Patent 2,614,474 and Claim 6 alone of Patent 2,634,666.

Since the patents are presumed valid, the burden of proving invalidity rests upon defendant. Plaintiff must prove infringement and also unfair competition.

In the Spring and Summer of 1945, Clayton B. Merry, living in Donelson, Tennessee, commenced experimentation

with a power driven garden tiller, the details of which he made known to his neighbor and friend, Donald W. Balfour. Merry actually used Balfour's workshop in his early work. The two then joined together in improving upon the original device that Merry had developed. The results of this joint effort, including the improvements, were significantly recorded in a joint application for patent which the two, together, filed August 23, 1946. This application for patent was given the number 692,595.

Reference to the joint patent application was made by Mr. Merry after he signed an oath in an application which he later filed by himself, and which issued to Patent 2,614,474. Based upon this second application for patent, Mr. Merry engaged in negotiation with Seidelhuber Iron and Bronze Works Company of Seattle, Washington, he having moved there from Donelson, Tennessee.

Seidelhuber Iron and Bronze Works having entered into the agreement with Mr. Merry in late January of 1948, experimented with the Balfour-Merry device which had a coaxial drive, and found it to be dangerous due to lack of control. They immediately set about to improve the tiller and did so by adding a brake tooth or fixed plow at its rear end, to enhance the control and reduce the danger of operation. These and related improvements took place in the plant of Seidelhuber Iron and Bronze Works in the Winter of 1948. In the early Spring of 1948, and specifically as early as March thereof, sales of these improved garden tillers were made by Seidelhuber Iron and Bronze Works to certain people including Messrs. Helgeland and Michel. Some of these sales were made through Central Supply Company in Portland, Oregon, where one Hofer served as a sales agent. These tillers had both the coaxial drive and brake tooth control means.

It should be noted that Mr. Merry had a disagreement with the Seidelhuber family in the Spring of 1948, whereupon he commenced to manufacture tillers having their improved construction feature placed thereon by Seidelhuber. By this act he discontinued to honor the provisions of his original agreement with Seidelhuber that the parties would consider the agreements to bind improvements which were made upon the original construction. Seidelhuber thereafter discontinued manufacture of the tillers.

Having observed these improvements which were made by Seidelhuber, Mr. Merry, acting alone, and in disregard of the interests of Donald W. Balfour, caused a sole application for patent to be filed in his own name, on April 25, 1949, more than one year following sales of the same device, as is described in Patent 2,614,474, the principal patent in suit. The application was not at the time filed as a continuation-in-part. To date Merry has not taken an oath as to the allegation of status continuation (allegedly October 2, 1951) even though the inventions of the two applications basically contain the same principles excepting for the brake tooth control. This new patent application broadly described the transmission so as to encompass both "coaxial" and "direct" drives. Mr. Balfour was not informed of the filing of this second patent application by Clayton Merry, and did not become fully aware of it until the institution of this law suit.

The joint venture between Messrs. Merry and Balfour disintegrated in 1949, following Mr. Merry's disagreement with the Seidelhuber interests and Merry resumed activities in partnership with one Allbery. On May 20, 1949, Bliven, the attorney, and Merry cancelled the Seidelhuber agreement. On April 11, 1950, the joint application of Balfour and Merry was abandoned without notice to Balfour. In July, 1950, Merry filed a third application for patent No. 176,461 covering the CULTIVATING WHEEL.

Having filed the sole application which led to issuance of Patent 2,614,474, Merry did not obtain any disclaimer from Balfour as to the subject matter which was covered in the new application for patent. Specifically, Claims 1 and 2 of Patent 2,614,474 have never been disclaimed by Balfour.

Mr. Sam Burns, a manufacturer of chain saws, developed a garden tiller of his own design in 1959. Burns had access to tillers of plaintiff's design and tillers of others, who were then competitive with plaintiff. These others included Choremaster, Gibson, Simplicity, Springfield designs. When he had completed his design effort, he obtained clearance from patent counsel that he did not infringe the patent rights of Merry Manufacturing Company, and so he then entered into the market by the distribution and sale of his garden tiller. It appears from the evidence that in the early promotion and sale of the Burns Tillers, certain promotional literature appeared which depicted the Burns Tiller with the cultivating wheel components of the type which are manufactured by Merry.

Although Burns had sold cultivating wheels similar to those which were patented by Merry in his Patent 2,634,666, his company has never manufactured nor sold cultivating wheels having the same characteristics. The tines of Burns' early cultivating wheels were secured to the circular plate by weldment of the connection between two legs rather than by weldment of one leg or tine to the plate.

Suit was subsequently brought against Burns Manufacturing Company. The entire assets of the defendant Burns Manufacturing Company were later acquired by Draper Corporation of Hopedale, Massachusetts.

With respect to Claims 1, 2, 7 and 8 of Patent 2,614,474, none of them contains a recitation as to the manner in which the cultivating wheels are driven. Accordingly, Claims 1 and 2 describe the joint invention of Merry and Balfour, as well as the improved invention. Claim 9 recites a reduction drive in the drive housing covering both coaxial and direct drives as do the 7 and 8 claims.

Claims 1, 2 and 7 of Patent 2,614,474 recite a construction including:

"* * * a frame providing a laterally spaced pair of longitudinal frame members, a drive housing secured between the frame members and extending above and below * * *"

Claims 8 and 9 call for a construction including:

For 8 "* * * a frame assembly providing a forwardly positioned motor mount, a rearwardly positioned hitch, etc. * * * a transversely-centered flat-sided drive housing located between and extending higher and lower than both the hitch and motor mount * * *"

For 9 "* * * a frame assembly providing a motor mount, a rearwardly positioned hitch * * * a transversely-centered drive housing located forwardly of the hitch and extending higher and lower than both the hitch and motor mount * * *"

In short, Claims 1 and 2 define the joint invention of Messrs. Balfour and Merry making no reference to brake tooth control, and Claims 7 and 8 and 9 define the Seidelhuber "coaxial" model as well as the Merry direct drive model, each having brake tooth control.

The Burns tiller has a winglike housing which is self-sufficient and which does not carry longitudinally extending frame members securing the housing between. The engine and hitch are each mounted on the wings of the Burns tiller by small steel shelves.

Claim 6 of Patent 2,634,666 calls for a construction including:

"* * * a bent length of bar stock producing two connected tines, one of which tines is secured to an end face of the anchoring flange with its free end extending radially therebeyond."

At present the Burns tiller has slasher tines. At one time Burns made a tiller having finger tines but they were welded to the hub at the bottom of the "U" not on one leg thereof.

## DISCUSSION
### Invalidity of Patent 2,614,474

This Court agrees with the defendant's position that it was fatal to the validity of Patent 2,614,474 for Merry not to join his prior co-inventor Balfour in the filing of the application which led to 2,614,474. Shreckhise v. Ritchie, et al., 160 F.2d 593 (CA 4, 1947), 40 Am. Jur. 576. Merry cannot now avail himself of the benefit of the earlier filing date. 35 U.S.C. §§ 120 and 102.

As previously stated, Claims 1 and 2 of this patent broadly describe the joint invention of Merry and Balfour, as well as the later tillers of Seidelhuber and Merry. Balfour did not disclaim his joint invention and has not yet done so. Claims 7, 8 and 9 include the improvement relating to the brake tooth control means; but this was the improvement which was developed by the Seidelhuber family, made and sold by it more than a year prior to the critical date of April 25, 1949, the date at which Merry filed his sole application.

In the matter of the filing date upon which Merry may rely in connection with 35 U.S.C. § 102(b) (public use), the determination of the date is based on whether or not Merry qualifies under 35 U.S.C. § 120, that is, may he, as sole inventor, acquire the benefits of the filing date of the joint Merry and Balfour application, namely, August 23, 1946? As the Helgeland and Michel public use and Seidelhuber sales are more than a year before the filing date (April 25, 1949) of the Merry sole application, now Patent 2,614,474, Merry requires the joint Merry and Balfour date to save the validity of his patent.

In order to qualify under 35 U.S.C. § 120, it is necessary that the application for Merry's sole patent be "for *an invention* disclosed in the manner provided by the first paragraph of Section 112 of Title 35 in an application previously filed in the United States *by the same inventor*." Section 112 requires that the application include a description of the invention, *and* claims " * * * particularly pointing out and distinctly claiming the subject matter which applicant regards as his invention. * * "
*A fortiori*, the claims of a later filed application under Section 120 must be to "subject matter" disclosed in the earlier case. The testimony in the present case indicates that only Claims 1 and 2 of the sole Merry patent in suit are readable upon the disclosed subject matter of the joint Merry and Balfour application. It follows that all of the other claims of the sole Merry patent are invalidated by the Seidelhuber sales to Helgeland and Michel and others and their public use. Furthermore, Claims 1 and 2 must have the benefit of the joint Merry and Balfour filing date, or they too are invalid.

The case law, as hereinafter discussed, is replete with references to the effect that "A and B" is a separate inventor entity from either "A" or "B" alone. The present state of the record in Civil Action No. 7081 is such that Merry is not entitled to a filing date earlier than April 24, 1949, because Balfour has never disclaimed. Hence, the statutory bar is effective against all of the claims in suit.

It is Merry's position that the statutes have liberalized the practice as to correction when a misjoinder of inventors has occurred. The patent having issued, Section 256 of Title 35 of the United States Code controls, and the correction must be in accordance with the provisions of this section, namely:

" * * * on application of *all* the parties and assignees, with proof of the facts and such other requirements as may be imposed * * *."
(emphasis ours)

It is a condition precedent that before a "sole" patentee of an issued patent may rely upon a "joint" application, there must be an "application of all parties". Section 116, applicable to pending patent applications, is far more liberal as only a showing of "error" is required of the applicant, "and such error arose without any deceptive intention on his part." The Commissioners thereafter prescribe the rules.

Rule 45 of the Rules of Practice of the United States Patent Office, 35 U.S. C.A.Appendix implements the provisions of Section 116, Title 35 of the United States Code, and the specific requirements for permitting a "sole" applicant to rely upon a prior "joint" parent application are set forth in the Manual of Patent Examining Procedure (201.06) and read as follows:

(a) It must appear that the parent application was filed "through error and without any deceptive intention".

(b) On discovery of the mistake the new application must be diligently filed and the burden of establishing good faith rests with the new applicant or applicants.

(c) There must be filed in the new application a disclaimer, under oath by the non-inventors of the divisible subject matter.

Section 256 of Title 35 of the United States Code is a codification of the law as it was established by the Court of Appeals for the District of Columbia In re Roberts, 49 App.D.C. 250, 263 F. 646, and followed in In re Perrin, 3 Cir., 142 F.2d 277, and In re Strain, 3 Cir., 187 F.2d 737. Thus, section 256 permits the application of the rule of these cases to "issued" patents, but only when the requirements of the statute have been met.

The statute is liberal in that it permits the correction of issued patents without following the onerous requirements for reissue, but it is restrictive because "all parties" must make application. Balfour has not applied and he cannot do so, as he was co-inventor of the claimed invention.

It was urged on behalf of plaintiff that the Strain case, supra, stands for the proposition that it is not necessary to disclaim disclosure but only claimed subject matter. This is in error. In the Strain case, the patent and the continuation-in-part were commonly owned and the parent earlier filed case had issued as a patent so that the scope of the claimed subject matter had been finally adjudicated in the Patent Office. Before the

patent issued obviously the oath must be read in the disjunctive, referring both to disclosure and claims. See Crompton, et al. v. Stafford Co., 1 Cir., 205 F. 925 (1913), wherein the Court said:

"Upon a fair construction of the language of the inventor's oath it applies to what is described as his invention and also to what is claimed, and is not limited merely to what is both described and claimed."

At the trial, and in its brief, the plaintiff made considerable point that the law for correcting invention in the Patent Office is different from and less liberal in its requirements than Section 256 of Title 35 of the United States Code. This position is hard to justify. 35 U.S.C. § 256 requires the application for correction of inventorship to be made by *all* parties. Every single case new or old involving Patent Office practice in correcting inventorship has required a disclaimer which is but another way of saying that the application for correction must be made not only by the party who seeks the date but also by the party who is giving up the status of joint inventor, in this instance, Balfour. Thus it is that the statute requires the concurrence of all parties and the Patent Office rule requires the concurrence of all parties, but in the Patent Office the requirement is a Rule of the Commissioner of Patents for implementing the statute, Title 35 U.S.C. § 116, while the requirement under Title 35 U.S.C. § 256 is directly embodied in the statute itself. The reason why 35 U. S.C. § 256 is more restrictive than 35 U. S.C. § 116 is that the public interest is not affected until after the issuance of the patent.

Plaintiff has cited a number of cases purporting to show that all Merry needs to do to get the benefit of the earlier date is to claim it by a cross reference in the application which became the patent in suit. This is inconsistent with the specific provision of Section 256 of Title 35, and inconsistent with the long established practices of the Patent Office under Section 116 of Title 35. Counsel for plaintiff cited the cases of: In re Rob-

erts, 49 App.D.C. 250, 263 F. 646; In re Perrin, 3 Cir., 142 F.2d 277; In re Strain, 3 Cir., 187 F.2d 737; and In re Schmidt, Cust. & Pat.App., 293 F.2d 274. In every one of these there was a *disclaimer,* i. e., an application for correction by all parties. In this present case, Balfour *will not become a party to application for correction as required in the first paragraph of Section 256 of Title 35, because as Balfour stated in evidence,* he doesn't consider that the joint application was in error.

■■ It thus becomes evident that when a misjoinder in an issued patent is brought before a United States District Court for correction, the correction must be made in compliance with the terms of the statute which gives the District Judge his authority, i. e. Paragraph 3 of Section 256 of Title 35 United States Code, which states:

> * * * as provided in this section and upon hearing of *all* parties concerned.

The Court has heard all parties and the evidence is clear that one of these parties, namely Balfour, is unwilling to make "application for correction as provided in this section". Thus, the correction cannot be made by reason of failure to comply with the statutory provisions.

As to correcting an issued patent for failure to join, see Title 35 U.S.C. § 256: Misjoinder of Inventor:

> "* * * Whenever a patent is issued and it appears that a person was a joint inventor, but was omitted by error and without deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate adding his name to the patent as a joint inventor.
>
> "The misjoinder or nonjoinder of joint inventors shall not invalidate a patent, if such error can be corrected as provided in this section. The court before which such matter is called in question may order correc-

tion of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly."

The error could possibly have been corrected while the sole application was pending in accordance with Section 116.

Title 35 United States Code § 116: Joint Inventors:

> "* * * Whenever a person is joined in an application for patent as a joint inventor through error, or a joint inventor is not included in an application through error, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes."

Title 35 United States Code § 120: Benefit of Earlier Filing Date in the United States:

> "An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application."

Concerning misjoinder of inventor, the principal decisions are: In re Roberts, 49 App.D.C. 250, 263 F. 646; In re Perrin, 3 Cir., 142 F.2d 277; and In re Strain, 3 Cir., 187 F.2d 737.

The defendant contends that it would have been necessary for Balfour to disclaim both disclosure and claimed subject matter, as set forth in Crompton, et al. v. Stafford Co., 1 Cir., 205 F. 925, holding:

> "Upon a fair construction of the language of the inventor's oath it

applies to what is described as his invention and also to what is claimed and is not limited to what is both described and claimed."

Referring to In re Roberts, 49 App. D.C. 250, 263 F. 646, the Court in In re Perrin excerpted as follows:

"It was established that one of two joint inventors could file a new sole application for matter that is, in substance, that of the former joint application and entitle it a continuation with benefit of continuity and of filing date of the joint case, but this was held to be conditional provided certain showing be made. Such showing appears to include among other requirements, admission by the eliminated party that he was not a joint inventor, that the subject matter was the sole invention of the other applicant."

The Statute at 35 U.S.C. § 102, makes no distinction between a public use or sale by the inventor or by a third party for the purpose of setting up a statutory bar. MaGee v. Coca-Cola Co., 232 F.2d 596, (CA 7, 1956).

■ To constitute public use to bar a patent, the use must have been of the perfected invention. Bourne v. Jones, 5 Cir., 114 F.Supp. 413, affirmed 207 F.2d 173 (CA 5, 1953), also holding to the effect that whether there has been prior public use of such a nature as to bar issuance of a patent is a question of fact. On public use, see also Lanham v. Southern Bakeries Co., Inc., D.C., 198 F.Supp. 926.

■ The fact that a prior article has been sold publicly and then abandoned does not render it unavailable as an anticipation and would preclude subsequent patenting by another party. H. Wenzel Tent & Duck Co. v. White, 199 F.2d 740, (CA 9, 1952).

Claims 1, 2 and 7, 8 and 9 are furthermore invalid because of the state of the patented art. For instance, the alleged invention in all of its essential and claimed details is found in U. S. Patent No. 2,196,347, which issued April 9, 1940 (Defendant Exhibit 43c Tab #8). Here the forward wheel (Figure 6) is pivoted and serves simply as a feeler and depth gauge, which is actually an "improvement" on the Merry construction. The use of frame assemblies to mount the power plant, hitch, control handle, transmission, rear plow and tractor wheels is notoriously old as will be apparent from reference to the Starriett, Glasier and Hull patents (Defendant Exhibit 43c, Tabs 3, 4, 5, 6, 7, 8 and 11).

■ The Courts have held to the proposition that the presumption of validity is unavailing and the patent should be carefully scrutinized when pertinent prior art was apparently not considered by the Patent Office during the pendency of the application. Rosaire v. Baroid Sales Division, National Lead Company, 218 F.2d 72, 75 (CA 5, 1955); Cornell v. Adams Engineering Co., 258 F.2d 874, 875 (CA 5, 1958); Murray Co. of Texas, Inc. v. Continental Gin Co., 264 F.2d 65, 69 (CA 5, 1959); and Gilkin v. Smith, 269 F.2d 641, 651 (CA 5, 1959), stating:

"The patentee's claims as he construes them in this case, are broad in scope and far-reaching in effect. A substantial segment of the hearing aid industry and an enormous number of the hard of hearing public will be affected if the patentee's contentions should be sustained in this litigation. In the circumstances, the interests of the public, paramount to the interest of the patentee and of the user of the accused device, compel a close scrutiny of the plaintiff's claim of invention." See also 69 C.J.S. Patents § 145, p. 587 (1951).

Concerning the applicability of the prior art to the question of inventorship, the case of Stabler, et al. v. Bright Leaf Industries, Inc., 261 F.2d 383, 385–386 (CA 5, 1958), holds as follows:

"Inventions require close scrutiny less patent monopolies be granted to 'each slight technological advance in an art' merely because it is useful. * * * It seems to us that he simply added together several old

elements, each independently usable. Each functions in its own way and there is no new coaction between the elements. * * * The combined results were a mere aggregation of old elements requiring no more than mechanical skill." Citing: Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; and Lincoln Engineering Co. of Illinois v. Stewart Warner Corp., 303 U.S. 545, 58 S. Ct. 662, 82 L.Ed. 1008. See also A. O. Smith Corp. v. Affiliated Gas Equipment, 205 F.2d 654, 657 (CA 5, 1953).

*Non-Infringement of Patent 2,614,474*

Assuming that the position of the defense concerning validity of Patent 2,-614,474 is untenable, the Court must then decide whether or not the claims describe the Burns Garden Tiller. This problem is rendered all the more difficult because of the conflicting testimony of defendant and plaintiff witnesses.

Claims 1 and 2 do not recite brake tooth means and they have been described as reading upon the joint invention of Balfour and Merry. Each of Claims 1 and 2 as well as Claim 7 contains the following limitations, however:

" * * * a frame providing a laterally spaced pair of longitudinal frame members, a drive housing secured between the frame members and extending above and depending below said members * * * "

Frame is defined in the patent as:

" * * * the two angle irons 4 and 5 * * * " Col. 2, 11 10–13, 11 33–34; col. 3, 11 24–25; col. 4, 11 10–13, inclusive.

In the patent application which is referred to as Defendant's Exhibit 43a, we find the following revealing commentary at Page 29, Lines 22–29, inclusive:

"Of great importance in the present invention is the fact that the inside opposed faces of the longitudinal frame members and the lateral sides of the drive housing are flat and in abutment. This novel ar-rangement provides a sufficient support so that a relatively thin walled drive housing can withstand the lateral bending movements exerted at the lower end thereof while the cultivator is in action."

The construction of the defendant clearly eliminates "longitudinal frame members" which are flat and in abutment with the lateral sides of the drive housing as called for by the drawings and description of Merry. To the contrary, comparable angle irons, abutting an housing are avoided by virtue of the wing-like design of the transmission housing in defendant's construction. Burns' transmission case does "not rely on any other thing to give it rigidity".

Webster's Dictionary defines a "frame" as follows: "an underlying structure or skeleton, an arrangement of supporting girders, beams, columns, joists or trusses forming the main support".

The patent calls for two separate components, namely, a frame as one element, and housing as another.

Plaintiff, on cross-examination of Mr. Burns, sought to show that its frame and housing being united were one and the same, but this position is inconsistent with the claim calling for a frame *and* a housing. Plaintiff's own witness Fyall testified that other elements within Merry device help support the drive housing. It is also inconsistent with prior representations in the Patent Office (supra) in which the frame is said to permit the use of "a relatively thin walled drive housing". In each of the Claims 1, 2, 7, 8 and 9, one finds either a frame or frame assembly plus a drive housing. In Claims 1, 2 and 7, the frame consists of longitudinal frame members plus a drive housing secured between the frame members.

In Claims 8 and 9, one finds a frame assembly plus a transversely centered flat-sided drive housing extending there between. In these claims, the frame assembly provides a motor mount, and the housing is centered there between. There is no such construction in the

Burns tiller because it is not required. The transmission systems are different. Burns' appears more efficient in transmitting the power to the cultivating wheels.

■ Merry, having restricted the claimed tiller of his patent, cannot now broaden it to include the defendant's tiller. In Gerrity, et al. v. Dallas Foundry, 4 F.2d 655, 656 (CA 5, 1925), the Court set forth that a manufacturer cannot insist on a broader construction after substituting a narrower claim which is allowed. For this reason and the reasons expressed in Exhibit Supply Co. v. Ace Corporation, 315 U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 736, the restriction of the frame and frame assembly herein is such as is material and must, accordingly, be strictly construed against the plaintiff.

This claimed "frame" structure which is missing from the accused tiller avoids infringement as has been set forth in Reed v. Parrack, 276 F.2d 784, 787–788 (CA 5, 1960), where the Court went further than is asked by Burns. Namely, the Court held that, even though omission of the structure is immaterial to the function and operation of the joint, infringement is avoided. In the present instance, the plaintiff has previously argued that the frame was material to supporting the casing. Says the Court:

> "If, to paraphrase the playwright, 'the combination is the thing' then all that goes to make up that combination is indispensable to its very existence. In more traditional terms, this leads to the universal principle of patent law that in a combination every element is essential and the patentee may not after issuance assert that that which was described as essential was immaterial after all. * * * If an element is completely missing as it is here and the function of that element is not afforded by that which remains, then there can be no infringement no matter how immaterial from a practical operational

sense the missing component may have been."

■ Infringement is a question of fact, Stilz v. United States, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202; Livesay Industries v. Livesay Window Co., 202 F.2d 378 (CA 5, 1953).

■ Infringement involves either manufacture or use or sale and does not encompass advertising. Welding Engineers, Inc. v. Aetna Standard Engineering Co., 169 F.Supp. 146, 149 (D.C.W.D. Pa.); Dow Chemical Co. v. Metlon Corp., 4 Cir., 281 F.2d 292; Hautau v. Kearney & Trecker Corp., D.C., 179 F.Supp. 490, 493. In the Welding Engineers case, it was stated:

> "No case found by us or called to our attention supports the proposition that advertising and solicitation of orders alone constitutes an act of infringement."

### Non-Infringement Patent 2,634,666

■ Although the earliest advertising of Burns would seem to indicate that he had offered tillers for sale having the cultivating wheels of the plaintiff, the evidence indicates that the defense never made nor sold wheels of plaintiff's design.

### Unfair Competition

■ The respective tillers are distinctively painted, defendant's being green and/or blue and white, and plaintiff's basically red. Plaintiff's tiller has angle irons forming a frame which extends on both sides of the elongated housing, fore and aft thereof to mount the engine and hitch respectively. The plaintiff's housing itself extends well above the frame, whereas defendant's housing is of lower center of gravity, having a self-sustaining wing-like structure. While it is true that there are certain parts of the respective machines which are the same, there is no proof of intent to copy, no actual copying by defendant or evidence of deception, all of which, if lacking, cause the plea to fail.

■ Substantially every decision in this area looks to proof of palming or

passing off the goods of defendant as those of plaintiff; the cases for plaintiff each recite the marketing of spurious goods in which the public is induced to buy the defendant's goods as those of the plaintiff. The evidence has reflected many related tillers on the market, all of which have common characteristics, but the two in suit are no more nor less alike than they are to others in competition. The test, it would seem, is whether resemblance be so great as to deceive the ordinary customer acting with caution usually exercised in such transactions, so that he may mistake one or the other. Nims Law of Unfair Competition and Trademarks, 4th Edition 1947. It is the defendant's position that plaintiff seeks hereby to extend his monopoly beyond the patent by condemning use of common, unpatented, standard parts. This is in violation of established doctrine. LeMur Co. v. W. G. Shelton Co., 8 Cir., 32 F.2d 79, 81.

The case law is clear that anyone may copy or make use of features which are necessary to the use of the article where such features are not themselves subject of patent protection. Pope v. McCrum Howell, 191 F. 979, 981 (CA 7, 1911). It is submitted that the patent is restricted to the basic components such as the motor, frame, transmission, housing, control handle, hitch, and the like. See the claims in issue.

Significantly, the evidence herein has shown that defendant distinguishes his product in trade from that of plaintiff.

The burden of proof has rested upon plaintiff to prove confusing similarity and intent to deceive and deception or the likelihood thereof, and it has failed to carry said burden. The evidence has shown error on behalf of defendant in its advertising, but has also shown such error to be so common as to be hardly actionable, if no intent to deceive be proven. Although Seidelhuber had advertised a tiller with no brake tooth, he sold none. The only advertising of defendant's that might be considered in this area was presented by plaintiff, showing the plaintiff's cultivating wheels as being adaptable to defendant's tiller. No such sales were recorded by plaintiff at trial, no deception nor intent to deceive customers was shown.