667 F.2d 1232
 216 U.S.P.Q. 1066
 C. Nelson SHIELDS, Jr., Trustee, and Advance Engineering,
Inc. (an indirect subsidiary of Baker
International Corporation), Plaintiffs-Appellees,
v.
HALLIBURTON COMPANY, Halliburton Services, Brown & Root,
Inc. and Brown & Root Marine Operators, Inc.,
Defendants-Appellants.
 No. 80-3729.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 19, 1982.
 
 James E. Cockfield, Kenway & Jenney, Thomas V. Smurzynski, Boston, Mass., Mouton, Roy, Carmouche, Bivins & Hill, Harmon F. Roy, Lafayette, La., John H. Tregoning, James Robert Duzan, Duncan, Okl., for defendants-appellants.
 Hubbard, Thurman, Turner, Tucker & Glaser, Robert W. Turner, John P. Pinkerton, Dallas, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before CLARK, Chief Judge, GOLDBERG and WILLIAMS, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 The defendants in this patent infringement suit appeal from the decision below upholding the validity of Bassett & Olsen reissue patent number RE 28,232 and finding infringement by the defendants. 493 F.Supp. 1376 (W.D.La.1980). We affirm.
 
 
 2
 The patent in issue pertains to a method of grouting the legs of offshore oil platforms. The history and details of the patent, including descriptive diagrams, are set out fully in the opinion of the district court. The following is a summary of the basic facts.
 
 
 3
 Many offshore platforms are mounted on cylindrical steel legs, called jackets. To strengthen and secure the mounting, pilings are inserted through the jackets and driven into the ocean floor. The resulting space inside the jacket between the outside of the piling and the inside of the jacket wall is referred to as an annular space, or annulus. In the final part of the process to set the jacket and piling, all water in the annulus is driven out, and the annulus is filled with liquid grout, which hardens and bonds the piling and jacket together. Prior methods had accomplished the dewatering and grouting at an underwater point near the bottom of the jacket. In the method taught by Bassett and Olsen RE 232 all operations are performed above the water line. The annulus is dewatered by sealing the top of the jacket and injecting compressed air to force the water out of the bottom of the jacket. Grout is then pumped into the annulus through a nipple at the top of the jacket. To prevent the sea water from reentering the bottom of the annulus, air pressure is maintained but modulated as the grout is injected so as not to force the grout out of the bottom of the jacket.
 
 
 4
 This pressure grouting method was first employed by Max Bassett in late 1968 on a McDermott platform. Bassett's initial efforts using the previous, conventional grouting methods had failed, and the idea of using air pressure to dewater the annulus was conceived on the spur of the moment. Some time later Bassett disclosed this procedure to H. W. Olsen, who suggested some additional ideas. One was to use a vibrator attached to the jacket in those instances where it was necessary to break the bond between the bottom of the jacket and the ocean floor so as to permit water to be driven out. Also, Olsen suggested maintaining air pressure not only to prevent the reentry of seawater in the early stage of the procedure, but also to provide a tighter bond between the grout and the jacket wall while the grout was setting. This latter Olsen idea is referred to by the parties as the "constraint" feature, i.e. the grout is constrained by air pressure while setting. Bassett and Olsen filed jointly for a patent on the pressure grouting method in September 1969, which resulted in the issuance of United States Patent No. 3,601,999 on August 31, 1971. Additional applications for this same method containing broader claims resulted in RE 28,232.
 
 
 5
 In August, 1977, the defendants began using grouting methods which allegedly infringed the patented method and this suit was brought. Following trial the district court found the patent valid and infringed. On appeal, the defendants press two main exceptions to the district court's ruling. First, they contend that the district court violated the "nose of wax" prohibition articulated in White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303 (1886), by giving the patent a narrow construction to find validity over the prior art and then giving it broad construction to find infringement.[1] Second, they say that the district court erred in according Bassett and Olsen RE 232 the liberal construction due a "pioneer" patent.
 
 
 6
 The premise for the defendant's "nose of wax" argument is the district court's statement that Bassett working alone on the McDermott platform was a different inventive entity from the subsequent collaboration of Bassett with Olsen. 35 U.S.C. § 102 provides that "a person shall be entitled to a patent unless ...(a) the invention was known or used by others in this country before the invention thereof by the applicant or ... (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed or concealed it." The district court accepted the defendants' contention that Bassett was "another" as to Bassett and Olsen. However, the district court found that Bassett and Olsen's joint work constituted a sufficient advance over Bassett's individual work to be separately patentable. The defendants assert that what the district court necessarily must have concluded was Olsen's advancing contribution to Bassett's own method was Olsen's "constraint" idea. In other words, the defendants claim that Olsen's "constraint" feature had to be the key to the district court's finding that Bassett and Olsen's work was a patentable advance over the prior work of Bassett alone. The defendants assert that they did not employ Olsen's constraint feature, and that in finding they nevertheless infringed the patent the district court must have ignored Olsen's contribution. They would establish a violation of the nose of wax doctrine by showing Olsen's contribution was the key to the trial court's finding of validity over the prior art, but that his contribution was ignored by the court in finding infringement. Defendants say this violates not only the nose of wax proscription, but also runs afoul of a related maxim: that which infringes, if later, anticipates, if earlier. Peters v. Active Manufacturing Co., 129 U.S. 530, 9 S.Ct. 389, 32 L.Ed. 738 (1889). The defendants claim that, at most, they repeated Bassett's earlier work. If doing so infringed Bassett & Olsen's RE 232, then Bassett's prior work anticipated it, and the patent is invalid.
 
 
 7
 We agree with the plaintiff that the district court was incorrect in its statement that Bassett's earlier work for which no patent was sought constituted earlier invention or prior art as to Bassett and Olsen. Accordingly defendants' argument, premised on that statement, fails. The trial judge correctly noted the factual distinction between the case at bar in which the "first" inventor, Bassett, never sought a patent himself, and the cases cited by defendants where the first inventor filed for, or received a patent for his own work, and subsequently filed jointly with a collaborator for newer developments. See In re Land and Rogers, 368 F.2d 866 (C.C.P.A.1966); Merry Mfg. Co. v. Burns Tool Co., 206 F.Supp. 53, 57 (N.D.Ga.1962), aff'd, 335 F.2d 239 (5th Cir. 1964); Kendall Co. v. Tetley Tea Co., 89 F.Supp. 897 (D.Mass.1950), aff'd, 189 F.2d 558 (1st Cir. 1951). The district judge found no precedent addressing the type of arguments presented here, and neither have we. Perhaps this is so because if the "first" inventor's initial work for which no patent was sought constitutes an earlier invention as to any subsequent efforts with a collaborator, no valid joint invention would be possible. Theoretically every joint invention would have to be the result of simultaneous inspiration by the collaborators. See Monsanto Co. v. Kamp, 269 F.Supp. 818, 824 (D.D.C.1967).
 
 
 8
 A leading authority on patent law explains that valid joint invention is possible in our situation, where the major share of the inventive effort is accomplished by one joint inventor working alone prior to the collaboration:
 
 
 9
 Every machine, before it can be used, must be constructed as well as invented. If one man does all the inventing and another does all the constructing, the first is the sole inventor. But where two or more persons exercised their inventive faculties in the mutual production of a new and useful process, machine, manufacture, composition of matter, or design, those persons are joint inventors thereof, regardless of whether one, or part, or all, or neither of those persons constructed or helped to construct the first specimen of that thing, or performed or helped to perform the first instance of that process. And the fact that one of two joint inventors conceived the best thought that went into the invention does not invalidate the patent issued to them jointly where the claim covers a series of steps or a number of elements in a combination. Nor is a patent to joint inventors invalidated by the fact that one of them only first perceived the crude form of the elements and the possibility of their adaptation to accomplish the result desired. In fact the conception of the entire device may be due to one, but if the other makes suggestions of practical value which assist in working out the main idea and making it operative, or contributes an independent part of the entire invention which helps to create the whole, he is a joint inventor even though his contribution be of minor importance. But if the contribution is the subject of a separate claim in the patent, such person is not a joint inventor.
 
 
 10
 1 A. Deller, Walker on Patents § 40, at 183 (1964). See Monsanto Co. v. Kamp, 269 F.Supp. at 824.
 
 
 11
 The cases involving an inventor who first seeks a patent, and then seeks a subsequent joint patent are distinguishable for a fundamental reason. Under the statutes governing patentability, novelty is a condition of patentability. 35 U.S.C. § 102. Had Bassett sought a patent for his work on the McDermott platform he must have claimed that the process he had developed was an invention. Had Bassett then collaborated with Olsen, and sought a patent for their joint product they would have been declaring that their work constituted an invention. In such a situation each process would have to be the first of its kind. Accordingly, the validity of Bassett and Olsen's patent application would have to be established against Bassett's earlier one. However, as here, where Bassett does some work, seeks no patent, collaborates with Olsen, and subsequently they together seek a patent, the joint application declares that their work submitted as a whole is a single invention-the first of its kind.[2] Because they declare their work to be a single, and first invention, as between the joint inventors there is no earlier invention or prior art against which the joint invention need be established. Thus, the validity of a joint patent issued to two inventors who work in succession is consistent with the normal analytical framework of the patent laws.
 
 
 12
 In this and prior litigation Bassett has maintained that he alone reduced to practice the subject matter claimed in RE 232. But whatever disagreement exists as to the true inventorship of RE 232 is of no avail to the defendants. As they doubtless are aware invalidation of a patent because of misjoinder is a technical defense carrying a heavy burden, Jamesbury Corp. v. United States, 518 F.2d 1384, 1395 (Ct.Cl.1975), and under 35 U.S.C. §§ 116 and 256, the remedy for innocent misjoinder is correction, and not invalidation. See Monsanto Co. v. Kamp, 269 F.Supp. at 824.
 
 
 13
 The defendants rely on Kendall Co. v. Tetley Tea Co., 89 F.Supp. 597 (D.Mass.1950), aff'd, 189 F.2d 558 (1st Cir. 1951), In re Land and Rogers, 368 F.2d 866 (C.C.P.A.1966), and Merry Manufacturing Co. v. Burns Tool Co., 206 F.Supp. 53 (N.D.Ga.1962), aff'd, 335 F.2d 239 (5th Cir. 1964) in support of their argument that the prior independent work of Bassett constitutes prior art or invention with respect to the subsequent joint activities of Bassett and Olsen. These cases deal with the scenario which we have just distinguished above where the initial individual inventor seeks a patent for his own work and then subsequently applies for a second patent with a collaborator.[3] Merry Manufacturing Co., relied on so heavily by the defendants, is likewise subject to the distinction we have made. This case involved an infringement suit in which an inventor sought to relate back the claims of his "own" new patent to identical disclosures in an earlier filed joint invention in which he was joined. The court held that absent a disclaimer of interest in the new patent by his earlier collaborator, the new patent would be invalid under 35 U.S.C. § 116 for failure to name his collaborator as a joint inventor. 335 F.2d at 242. Like Kendall Co., and Land, the joint inventors and the single inventor in Merry Manufacturing both sought patents for the same claims.
 
 
 14
 Our holding here is not that the only earlier invention which can defeat a claim of novelty under 35 U.S.C. § 102 is one for which a patent is sought. The case before us involves the situation where one of two joint inventors has done earlier work for which no patent was sought. It does not involve the situation where earlier work was done by a stranger to the joint inventorship. As 35 U.S.C. § 102 makes plain, earlier invention, public use or sale by "another" can invalidate the joint inventors' claim of novelty. The statute does not require that a patent be sought by the "other."[4] See Rosaire v. Baroid Sales Division, National Lead Co., 218 F.2d 72, 74-75 (5th Cir. 1955). The only question we answer is whether, under these facts, Bassett is "another" to Bassett and Olsen. We hold he is not, and affirm the district court's conclusion that the patent is valid.
 
 
 15
 While thus disposing of the "nose of wax" theory, we must still consider the defendants' claim that their omission of the constraint feature of the patent means they have not been guilty of infringement. An initial problem for the analysis of this claim is that defendants advance two different concepts of what comprises the Olsen constraint feature. At one point defendants argue that Olsen's constraint teaches not a concept of constraining the grout while it sets, but of maintaining "static air pressure" at the level used to prevent ingress of seawater when the grout is first injected. The defendants interpret this maintenance of "static air pressure" to require undiminishing air pressure throughout the operation. In the method they used, and that which Bassett alone used, air pressure is gradually reduced as the increasing weight and volume of the incoming grout itself exerts enhanced pressure to prevent the seawater from reentering the jacket. Accordingly, they argued that their use of a diminishing air pressure technique would not infringe. The plaintiffs counter this argument by pointing out that if air pressure were not reduced as grout is injected the equilibrium between the grout and the seawater would be destroyed and the grout would be blown out the bottom of the annulus into the sea, and never allowed to set. The district court properly resolved this argument by pointing out that the patent describes "controlling", (with valves and gauges) and therefore reducing, air pressure as necessary to maintain equilibrium between the grout and the seawater. Defendants' argument would force an interpretation of the patent which would make it unworkable. We reject such an approach. See Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 284, 79 L.Ed. 721 (1935). Unquestionably, the defendants have infringed the diminishing air pressure feature of the patent as it relates to the injection of grout.
 
 
 16
 At other parts of their brief the defendants have correctly identified the Olsen constraint feature as requiring maintenance of air pressure on the setting grout for the purpose of assuring a tight bond with the jacket wall. The defendants concede that in two of their three allegedly infringing operations, some residual air pressure was applied as the grout set. This supports the finding that as to these operations, there was literal infringement. The defendants argue, however, that the amount of residual pressure used by them was far below that specified in the patent. However, the specifications do not call for any precise level of residual pressure. We therefore affirm the finding of literal infringement on the Marathon and Freeport Sulphur grouting operations.
 
 
 17
 The defendants claim that the constraint feature was omitted altogether on the Mobil platform. In analyzing a claim for infringement where a portion of the process has been omitted, two different propositions in the patent law must be reconciled. One is that every step of a process patent must be duplicated in order to find infringement. Nationwide Chemical Corp. v. Wright, 584 F.2d 714, 717 (5th Cir. 1978). The other, sometimes referred to as the doctrine of equivalents, was developed by the courts to protect patentees where the claimed method is followed in all substantial aspects, or to put it another way, that minor variations won't defeat infringement. Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 868-870; Weidman Metal Masters v. Glass Master Corp., 623 F.2d 1024, 1026 (5th Cir. 1980); Studiengesellschaft Kohle v. Eastman Kodak Co., 616 F.2d 1315 (5th Cir. 1980). The nature of the invention itself affects the range of equivalents. A "pioneer patent", which covers a function never performed before, receives a much broader protection than a patent which merely makes improvements upon existing technology. Studiengesellschaft Kohle v. Eastman Kodak Co., 616 F.2d at 1324. See Ziegler v. Phillips Petroleum Co., 483 F.2d at 869 n.70; Weidman Metal Masters v. Glass Master Corp., 623 F.2d at 1026.
 
 
 18
 The district court found as a fact that while each of the steps of the Bassett and Olsen patent might have been evident in analogous prior art the patented process was the first to combine them all so as to accomplish an altogether new function, i.e. grouting an offshore platform without the use of grout lines, packers and divers. Based on this subsidiary factual finding, which we are bound to accept unless clearly erroneous, Weidman Metal Masters v. Glass Master Corp., 623 F.2d at 1026, the court concluded that Bassett & Olsen RE 232 was a pioneer patent.
 
 
 19
 Except for Bassett's own work, which is not to be considered here against the joint invention, the defendants point only to a patent issued to Hagius in assailing the trial court's finding that the patent at bar performed a significant new function. The district court considered the Hagius patent, but found that it was not directed to grouting offshore platforms. It did not purport to solve the unique problem of counteracting and balancing seawater pressure at the bottom of an annulus. Rather, the trial court found that Hagius contemplates a method for injecting grouting fluid into earthern material. The defendants assert that the trial court was wrong in stating that Hagius was nonanalogous prior art because it did not direct itself either to grouting an annulus, or to a situation where the return of water may occur. But, even assuming that Hagius involves analogous prior art, Cathodic Protection Service v. American Smelting & Refining Co., 594 F.2d 499, 510 (5th Cir. 1979), the function which the grouting process taught there is quite different from the dewatering, pressurized grouting, setting and sealing functions which the Bassett and Olsen RE 232 process involve. Moreover, the trial court's findings demonstrate that this process marked a distinct step in the progress of the art of grouting offshore platforms, as opposed to a mere improvement of prior or analogous techniques. Ziegler v. Phillips Petroleum Co., 483 F.2d at 870. We therefore affirm the trial court's finding that Bassett and Olsen RE 232 is a pioneer patent, entitled to a liberal range of equivalents. Thus, even assuming the defendants did not use the constraint feature on the Mobil platform, we find infringement using the doctrine of equivalents. The defendants performed substantially the same function in substantially the same way to obtain the same result. Clearly, the heart and substance of the patent was copied. Weidman Metal Masters v. Glass Master Corp., 623 F.2d at 1030; Studiengesellschaft Kohle v. Eastman Kodak Co., 616 F.2d at 1324.
 
 The judgment is
 
 20
 AFFIRMED.
 
 
 
 [1]
 "Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express." White v. Dunbar, 119 U.S. 47, 51, 7 S.Ct. 72, 74, 30 L.Ed. 303 (1886)
 
 
 [2]
 What could have been the subject of scrutiny here was the question of whether the subsequent collaborator was truly a joint inventor. It appears that Bassett conceived and reduced to practice on the McDermott platform that which is actually claimed in the patent. Olsen's constraint feature is found only in the specifications. On the basis that the claims, read in light of the specifications, are ordinarily the sole measure of a patent's grant, see Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 868 (5th Cir. 1973), an issue might have been raised as to whether Olsen was a true inventor as to any of the claims in the patent. See Deller, Walker on Patents, supra
 
 
 [3]
 "Reed alone being the original and first inventor of the invention disclosed by his application Serial No. 30,022 ... the disclosure by Reed and Ryan, jointly, in their application for the patent in suit, cannot be held to be a patentable invention if the earlier invention by Reed alone was such an encroachment upon the field that what it left was too little by way of creative advance to support a patent." Kendall Co. v. Tetley Tea Co., 189 F.2d at 563. See Land, 368 F.2d at 879
 
 
 [4]
 Also, it should be noted that the joint inventors are not free of other limitations under the patent statutes. For example, under 35 U.S.C. § 102(b) they would not be entitled to a patent if either had used the invention in public or had sold it more than one year prior to the date of application