**MERRY MANUFACTURING COMPANY, Appellant,**

v.

**BURNS TOOL COMPANY and Economy Auto Stores, Inc., Appellees.**

**No. 20103.**

United States Court of Appeals
Fifth Circuit.

July 30, 1964.

Rehearing Denied Sept. 11, 1964.

**240**

Richard W. Seed, Seattle, Wash., and Hamilton Lokey, Atlanta, Ga., for appellant.

John Gibson Semmes, David H. Semmes, Washington, D. C., and Glover McGhee, Atlanta, Ga., for appellees.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is an appeal by the Patentee from a decree holding Claims 1, 2, 7, 8 and 9 of Merry Patent No. 2,614,474 invalid as well as uninfringed and also denying the claim for unfair trade practices. We affirm.

The device involved is a walking, motor-powered tiller by which the soil is turned by tined wheels that afford, together or separately, the traction as well. Claims 1 and 2 [1] relate to a structure in

---

1. Claim 1 is typical:

"1. A walking cultivator comprising a frame providing a laterally space pair of longitudinal frame members, a drive housing secured between the frame members and extending above and depending below said members, laterally extending shafts journal-mounted in the upper and lower ends of the drive housing, a power unit mounted on said frame members forwardly of the drive housing, means for transferring power from the power unit to the upper said shaft, and means in the drive housing for transferring power from the upper shaft to the lower

which the sole contact with the ground is the tined wheels. The earth-moving, if not earth-shaking, contribution of Claims 7, 8 and 9 [2] is the presence of a vertical, fixed tooth at the rear of the machine which the operator can depress into the ground simply by raising or lowering the handles. Its importance is not only to supply an additional plow, but, the Patentee contends, as the tooth is raised or lowered, the forward motion of the tiller is correspondingly affected thus causing a deeper or shallower digging action.

Following extensive pretrial discovery, the case was fully tried on a record of over 800 pages of testimony coming from live swearers and depositions together with some 213 documentary exhibits. As is so often so, the loser here urges credibility choices rejected by the trial Judge, but here as there, cf. Williams v. National Surety Corp., 5 Cir., 1958, 257 F.2d 771, at 773; O/Y Finlayson-Forssa A/B v. Pan Atlantic Steamship Corp., 5 Cir., 1958, 259 F.2d 11, 13, 1958 AMC 2070; Higgins, Inc. v. Hale, 5 Cir., 1958, 251 F.2d 91, 1958 AMC 646, this mistakes our function. So far as fact findings, express or implied, are challenged, they readily pass the muster of clearly erroneous. F.R.Civ.P. 52(a).

The legal conclusions under attack must therefore be treated in the light of the fact findings thus accepted. Because of our limited role, the case is greatly simplified.

It is recognized by all that for Claims 1 and 2 to be effective, they must relate back to August 23, 1946, the date of application Ser. No. 692,595 filed jointly by Merry and Balfour as co-inventors.[3] Relation back depends on whether Balfour was, or is, required to make a disclaimer, either formally as such or in some other suitable way, to indicate substantively that he is not asserting any right to any part of the invention covered by the issued patent.

Because of the one-day tardiness of the Patentee's then solicitor in responding to an Action of the Examiner, the initial application of Merry-Balfour application was abandoned as of October 10, 1949. Merry's sole application was filed April 25, 1949 (see note 3, supra). Thus, two of the procedural requirements of § 120, 35 U.S.C.A. § 120, were satisfied, one being that the subsequent application "contain a specific reference to the earlier filed application," the other being that the later application was "filed before the patenting or abandonment of or termination of proceedings on the first

shaft, axially aligned earth working wheels driven by the lower shaft at opposite sides of the drive housing and each adapted to perform both tractive and tilling functions, the depending portion of said drive housing having a narrow width between its lateral faces."

2. Claim 7 is typical:

"7. A walking cultivator comprising a frame providing a laterally spaced pair of longitudinal frame members and a rearwardly extending control handle, a drive housing secured between the frame members and extending above and depending below said members, laterally extending shafts journal-mounted in the upper and lower ends of the drive housing, a motor mounted on said frame members forwardly of the drive housing, means for transferring power from the motor to the upper said shaft, means in the drive housing for transferring power from the upper shaft to the lower shaft, axially-aligned tined earth working wheels driven by the lower shaft at opposite sides of the drive housing and each adapted to perform both tractive and tilling functions, and brake tooth means depending from the frame rearwardly of the said wheels and adapted to be urged into the ground to various depths of downward pressure exerted on the control handle while the cultivator is being steered to create a variable braking force whereby the power to the wheels is selectively apportioned between the said tractive and tilling functions thereof, *said wheels and brake tooth means being arranged to provide the entire ground-engaging support for the cultivator."* (Emphasis supplied.)

3. Patent 2,614,474 issued October 21, 1952, on the sole application of Clayton B. Merry, dated April 25, 1949, Serial No. 89421. In the opening paragraph of the specifications, the patent as allowed stated: "This application is a continuation-in-part of my abandoned application. Ser. No. 692,595, filed August 23, 1946."

application * * *." The controversy turns on whether there was, or may now be, compliance with the third requirement that the "invention" must be "disclosed in the manner provided by the first paragraph of section 112 * * * in * * *" the earlier "application previously filed * * * by the same inventor * * *." Of course the answer to this critical question is complicated by the fact that the initial application was by joint inventors thus bringing into play §§ 116[4] and 256.[5]

Balfour has not disclaimed and the Court has found that he will not, and, in any event, could not since the omission of his name was not "by error * * * without deceptive intention * * *." Consequently for Merry to get the earlier filing date, he must establish that no character of disclaimer, formal or substantive, by Balfour was required. He attempts to do this by asserting the legal proposition that disclaimer of an apparent joint inventor is required only as to a joint invention *claimed* in the earlier application. In other words, if the joint invention is disclosed but not *claimed* in the earlier application, no disclaimer is essential.

We think the District Court was correct *in rejecting this argument.* This conclusion is supported by a number of cases, and the Patentee's reading of some of them and efforts to distinguish others, we find to be unpersuasive. In re Roberts, D.C.Cir., 1920, 263 F. 646; In re Perrin, 3 Cir., 1944, 142 F.2d 277; In re Strain, 3 Cir., 1951, 187 F.2d 737; In re Schmidt, CCPA, 1961, 293 F.2d 274; Shreckhise v. Ritchie, 4 Cir., 1947, 160 F.2d 593. The subject matter of Claims 1 and 2 in the issued patent included to a substantial extent matters disclosed although not *claimed,* in the earlier joint Merry-Balfour application. Consequently, the patent is invalid for failure to include Balfour as a joint inventor, § 116, and there being no disclaimer, formal or one of substantive equivalence demonstrating to the Court that Balfour was not, or could not, be asserting any rights in the subject matter of the subsequent application, such tetative invalidity is not overcome.

To be sure, § 256 expressly recognizes that misjoinder or nonjoinder does not inevitably "invalidate a patent." The patent is unenforceable until corrective steps are taken. But if, as is the case here, correction cannot be made because under controlling principles, the omission was not "by error" the unenforceability ripens into invalidity.

■ As to Claims 7, 8 and 9 dates are also critical.[6] The application was filed

4. 35 U.S.C.A. § 116: "When an invention is made by two or more persons jointly, they shall apply for patent jointly and each sign the application and make the required oath * * *.

"Whenever a person is joined in an application for patent as joint inventors through error, or a joint inventor is not included in an application through error, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes."

5. 35 U.S.C.A. § 256: "Whenever a patent is issued on the application of persons as joint inventors and it appears that one of such persons was not in fact a joint inventor, and that he was included as a joint inventor by error and without any deceptive intention, the Commissioner may, on application of all the parties and assignees, * * * issue a certificate deleting the name of the erroneously joined person from the patent.

"Whenever a patent is issued and it appears that a person was a joint inventor, but was omitted by error and without deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, * * * issue a certificate adding his name to the patent as a joint inventor.

"The misjoinder or nonjoinder of joint inventors shall not invalidate a patent, if such error can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly."

6. There is no contention that Claims 7, 8 or 9 under any theory come within the

April 25, 1949. The District Court found these Claims invalid because more than one year prior to such date there was a public use and sale of the invention. 35 U.S.C.A. § 102(b).

In 1947 Merry engaged in negotiations with Siedelhuber Iron and Bronze Works Company of Seattle, Washington, concerning the manufacture of the tiller. Upon consummation of the agreement in January 1948, Seidelhuber undertook experiments with the Balfour-Merry device. As disclosed in the abandoned application and in its early embodiments this Balfour-Merry machine had a coaxial drive. At the risk of over-simplification, this may be briefly described. There were four tined rotors. The tines of the inner two were longer and were mounted on a stub shaft which revolved around the shaft on which the outer rotors were mounted. The outer rotors were slightly shorter. The two sets of shafts were separately connected to the power take-off reduction gears. The result was that in operation the inner, longer-tined, rotors operated slower. This had the effect, in part, of acting as a sort of brake on the machine while the fast-turning tined rotors cultivated.

In their experiments with the Balfour-Merry coaxial drive machine, the Seidelhubers found it to be difficult if not dangerous to operate because of lack of control. They set about to improve it by adding a brake tooth or fixed plow at its rear end. In the early spring of 1948, and specifically as early as March 1948, sales of these improved garden tillers were made by Seidelhuber. It is uncontradicted that several sales of these tillers having coaxial drive and the brake tooth control device developed by Seidelhubers were made by them more than one year prior to the application of April 25, 1949. It was on this basis that the Court found the patent invalid under § 102. The Court also found as a fact that the idea

earlier joint application of Merry-Balfour of August 23, 1946.

7. The Court also held that the claims were invalid for want of invention in view of

of using a vertical plow at the rear of the machine to improve operation and to achieve better control was wholly that of the Seidelhubers. Consequently, since it is the Patentee's contention that this is one of the significant contributions, the Court concluded that patent is invalid for the additional reason that Merry "did not himself invent the subject matter sought to be patented." 35 U.S.C.A. § 102(f).[7]

The Patentee does not really challenge the actual sale of these machines at a time more than a year prior to the application. Its theory, as we understand it, is that Claims 7, 8 and 9 do not "read on" these structures and this device. This sets in train the familiar but unuseful bootstrap-question-begging maxim that that which would not infringe if later, does not anticipate if earlier. This, they argue, is important because the "public use" or "public sale" under § 102 (b) must be of "the very invention patented." Goodwin v. Borg-Warner Corp., 6 Cir., 1946, 157 F.2d 267, 272.

They seek to distinguish these 1948 Seidelhuber tillers from the patented structure on two principal but related grounds, one as a matter of physical operating characteristics, and the other as a question of claims construction.

As to the operational aspects, the Patentee insists that as disclosed in the patent, the function of the vertical plow at the rear is to supply a braking effect thus tending to drive the cultivating tined rotors into the soil. In contrast to claims 7–9, it is insisted that in the Seidelhuber machine this was supplied by the coaxial drive with the inner slower moving tined rotors furnishing the braking effect. Consequently, it is urged, the real reason for the Seidelhubers putting in the rear vertical tooth was merely to cultivate or work the earth in the relatively wide space between the earth-working tined exterior rotors. In the Patentee's ap-

the prior art. 35 U.S.C.A. §§ 102(a), 103. In view of our disposition of the case, we do not reach this matter.

proach, the use of the vertical plow eliminates the necessity for the coaxial drive with two sets of tined rotors.

Then, in approaching it from a question of claim construction in the light of these asserted operating characteristics, the Patentee contends that the Seidelhuber structure is not the one disclosed by Claims 7, 8 and 9 for two reasons. The first is that Claims 7, 8 and 9 describe a direct drive, not a coaxial drive, and second (or perhaps as a part of this) the Seidelhuber machine could not meet the limitation of Claims 7, 8 and 9 that "said wheel and brake tooth means [are so] arranged to provide the *entire* ground-engaging support for the cultivator." (See the italicized portion of Claim 7, note 2, supra.)

■ We agree with the District Judge that Claims 7, 8 and 9 cover a coaxial model similar to that of Seidelhuber as as well as the later perfected Merry direct drive model. In its reply brief, Patentee categorically "agrees" that "claims 1 and 2 * * * read on a coaxial drive machine * * *."[8] Claims 1 and 2 speak in terms of means "for transferring power from the upper shaft to the lower shaft" with axially aligned earth-working wheels "which are driven by the lower shaft" (see note 1, supra).[9] This is substantially identical with the language in Claim 7 which speaks of "axially-aligned tined earth-working wheels" which are "driven by the lower shaft".[10] If, as the Patentee recognizes, the singular "shaft" can encompass a coaxial drive made up literally of two "shafts," it does no offense to like literal language of Claims 7, 8 and 9 to construe them broadly enough to cover both direct and coaxial drives. This is but a recognition of a

principle frequently expounded, often repeated, that patent construction is seldom a matter of pure literalism. U.S. Industries, Inc. v. Otis Engineering Corp., 5 Cir., 1960, 277 F.2d 282, 287; Inglett & Co. v. Everglades Fertilizer Co., 5 Cir., 1958, 255 F.2d 342.

Of course once the conclusion is reached that the Claims 7, 8 and 9 encompass coaxial as well as direct drive, the concluding clause [11] offers no problem. The term "said wheels" refers to the tined earth-working wheels which, for a direct drive, would be two, and for a coaxial drive would be four—namely two interior and two exterior wheels. In the Seidelhuber machine, the entire ground-engaging support for the whole apparatus was the four wheels (two interior and two exterior) and the brake tooth at the rear. In the Merry direct drive machine, the entire ground engaging support is the two tined wheels and the brake tooth at the rear.

The result is that the Seidelhuber machines of 1948 come within the "invention" described in Claims 7, 8 and 9. This precipitates the ban of § 102(b) forbidding the patenting of "an invention" which "was * * * in public use or on sale" more than a year prior to the application.[12]

■ This leaves only the additional claim for unfair trade competition. The District Court recognized that the Defendant-Appellee in certain advertising and sales material had used terminology, devices, or descriptives which were those of the Merry machine and equipment. But the Court also found that this was not a purposeful thing done with the intent to deceive or to palm off the Burns product as that of Merry. There is no

---

8. Page 7 reply brief.

9. Claim 2 speaks in terms of "axially aligned earth-working wheels" which are "driven by the lower shaft."

10. Claim 8 reads: "Axially-aligned tined earth-working wheels driven by the lower shaft," as does Claim 9.

11. This is the clause italicized in note 2, supra: "said wheels and brake tooth means being arranged to provide the entire ground-engaging support for the cultivator."

12. This also makes it unnecessary to pass upon the correctness of the trial Court's holding of invalidity by reason of the prior art (see note 7, supra) and the further finding of noninfringement.

significant controversy about the applicable principles of law either here or below. It all turns on factual evaluations. Whether the Judge might have arrived at different conclusions or whether we might have were it before us initially is of no significance. His fact findings are supportable, F.R.Civ.P. 52(a). Affirmance of this phase of the case will have no substantial effect so far as the protection of whatever business-trade rights the Patentee might have in the future. Patent law, as such, no longer constitutes any stumbling block to Burns. But the unsuccessful Patentee has full redress, equitable or legal or both, for any transgressions of trade and competitive practices followed by Burns which violate accepted applicable principles of controlling state or federal law.

Affirmed.