**ELECTRONIC DATA SYSTEMS CORPORATION, Plaintiff-Appellant-Cross Appellee,**

v.

**SIGMA SYSTEMS CORPORATION et al., Defendants-Appellees-Cross Appellants,**

v.

**CHANCELLOR INDUSTRIES, INC., Involuntary Plaintiff-Appellee.**

No. 73–1676.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1974.

Ernest E. Figari, Jr., J. Edwin Fleming, D. Carl Richards, Jerry W. Mills, Glen Adams, Dallas, Tex., for plaintiff-appellant-cross appellee.

Mike M. Tabor, Tom James, Dallas, Tex., Robert A. White, Houston, Tex., for defendants-appellees-cross appellants.

John L. Estes, Dallas, Tex., for Chancellor, Ind., Inc.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

ACTION:

On September 18, 1970, Electronic Data Systems Corporation (E.D.S.) filed suit in the United States District Court for the Northern District of Texas against Sigma Systems Corporation (Sigma), and others [1] E.D.S., seeking injunctive relief and a damage award, claimed that Sigma had infringed on an E.D.S. patent, No. 3,515,806, and had breached a written nondisclosure agreement dated February 23, 1968, a written prototype noncompetition agreement dated May 28, 1968, and their confidential relationship with E.D.S.

Sigma, the defendant herein, counterclaimed alleging violations of the Sherman and Clayton Acts by E.D.S. in regard to the May 1968 noncompetition agreement. Trial by jury was requested. After presentation of testimony and evidence, 35 multipart interrogatories were submitted to the jury. The answers given by the jury were partially favorable to E.D.S. and partially favorable to Sigma. E.D.S. then moved for a judgment notwithstanding the verdict and Sigma moved for a judgment based on the verdict.

The trial court issued a memorandum opinion and order which sustained in part and overruled in part both motions. Appeals by both parties to this court followed.

---

1. To avoid confusion and for the purpose of simplicity, the term "Sigma" applies to all the named defendants. Our review of this case does not demonstrate a need to consider any of the defendants separately.

FACTS:

E.D.S. is a corporation which is engaged in the business of designing, installing and operating computer systems for large organizations at a predetermined price. Sigma is a research and development corporation specializing in the construction of instrumentation for the aerospace industry. The subject of the patent in question and of the written agreements underlying the present action is a device about the size of a cigar box which can be used to communicate directly with a computer from a remote point through a telephone. The device, for which E.D.S. holds a patent, is called a Portable Remote Terminal (P.R.T.). The concept of the specific P.R.T. with which this suit is concerned was originated by an E.D.S. employee, Earl Spraker. This origination took place in approximately October of 1966. Spraker, over the course of the next year, constructed several working models of this P.R.T., and in October of 1967, E.D.S. and Spraker commenced preparations to apply for patent protection on the P.R.T. On March 22, 1968, a patent application covering the P.R.T. was filed with the United States Patent Office. In September of 1968, a second application for patent protection on the P.R.T. was filed with the patent office which was broader in subject matter than the first; therefore, the first application was allowed to become abandoned in favor of the second. The subject matter of the second application which was included in the first is deemed to have been filed on the earlier date.

In January of 1968, Spraker was transferred by E.D.S. from Atlanta to Dallas in order to work fulltime on the further development of this P.R.T. and its application. As soon as he arrived in Dallas, Spraker set out to locate a qualified research and development company to manufacture several prototypes of this invention. It appears that he contacted approximately 15 firms to ascertain their capabilities of meeting his demands. In his discussions with each firm, Spraker followed a uniform procedure regarding his disclosure of information concerning the P.R.T. This disclosure of information would usually be followed by a demonstration of one of the P.R.T. models he had constructed. On February 23, 1968, Spraker contacted Sigma regarding their possible manufacture of prototypes of his P.R.T. After full disclosure and demonstration of the model, Sigma expressed an interest in working with E.D.S. to develop the prototypes requested. Sigma was invited to submit a bid on construction of ten prototypes and was then selected by E.D.S. to construct these ten. It should be noted that the invitation for bids sent by E.D.S. to Sigma provided on its first page:

"IMPORTANT: The prospective Bidder, by receipt of the specifications and information herein contained, acknowledges that such specifications and information which may subsequently be supplied by Owner have been, or will be, disclosed to it in strictest confidence, that Owner has and shall have a proprietary interest in all such specifications and information, and the right and privilege to use, patent, manufacture, or otherwise exploit the processes, ideas and concepts described or revealed therein belong to Owner to the absolute exclusion of any such right or privilege of the prospective Bidder or any officer, director, employee, agent, assignee or successor of the prospective Bidder.

"In consideration of such disclosure, the prospective Bidder, by receipt of any such specifications or information, agrees that all precautions will be taken to insure that such specifications and information will not be revealed or divulged to any third party at any time, or copies, summaries, or like material made thereof or therefrom, without the knowledge and written consent of Owner, and all such specifications, information and materials, including any copies, summaries or the like made thereof or therefrom, will be promptly returned to Owner upon demand" . . . .

After Sigma was chosen to produce the ten prototype P.R.T.'s, negotiation commenced for the purpose of drawing up a written contract covering production of the prototype P.R.T. Both E.D.S. and Sigma were represented by counsel at these negotiations. In May of 1968, E.D.S. and Sigma executed a written agreement and title contract covering the construction and delivery of the ten P.R.T. prototypes. Part of that contract was a nondisclosure clause which stated approximately the following: Sigma agreed that it would not reveal or divulge, et cetera, any information and data furnished by E.D.S. or any other information generally produced by Sigma under the contract, without prior written consent of E.D.S., except to members of Sigma's design staff as was reasonably necessary for Sigma to perform its obligations under the contract. There was also a statement that Sigma agreed not to construct or participate in the construction of a portable terminal unit similar to the unit being produced for E.D.S., except for the sole benefit and use of E.D.S. This May 1968 agreement also included an anticompetition clause pertaining to the portable remote terminal business and the computer services business. In essence, that clause stated that Sigma would not compete with E.D.S. by constructing or participating in the construction of an alpha-numeric data input terminal and Sigma would not compete with E.D.S. by entering the computer services business.

Some months after this project went into operation, Sigma proposed an inexpensive version of the P.R.T. E.D.S., however, did not choose to produce the inexpensive version at that time and the matter was carried along with the project. Later on, Sigma again proposed a cheaper version of the P.R.T. However, E.D.S. again decided not to pursue production of the cheap version. In October of 1968, the ten prototypes produced by Sigma were delivered to E.D.S.

On June 2, 1970, two years after the second application for patent was filed, the United States Patent Office issued Patent No. 3,515,806, which patent is involved in this suit.

Beginning in August of 1969, Sigma commenced to market a portable audio terminal or P.A.T. Sigma leased or sold these P.A.T.'s to Computech, Inc., Republic National Bank of Dallas, Cooperative Computers of America, Inc., Source Data Automation, Inc., National Data Communications, Inc., and Ussery Industries, Inc.

Although there is no evidence to indicate that Sigma had a policy of secrecy regarding this selling and leasing of the P.A.T., E.D.S. alleges that it only discovered that Sigma was manufacturing and marketing P.A.T.'s in the summer of 1970, when it received such notification from its licensee, Chancellor Industries, who was producing the P.R.T. Therefore, in September of 1970, E.D.S. commenced a suit in state court to sequester the tools and dyes used by Sigma to produce the P.A.T. and to temporarily enjoin Sigma from continuing to use and disclose information received under the nondisclosure agreement of February 23, 1968. After a hearing in October of 1970, the state court entered an order granting a temporary injunction against further disclosure and use of information pertaining to the P.R.T. against Sigma. On the same date E.D.S. filed suit in state court it also filed suit in federal court. In the original complaint E.D.S. sought an injunction against and damages for Sigma's alleged infringement of its patent through Sigma's manufacture and sale of the P.A.T. E.D.S. also sought an injunction against and damage for Sigma's alleged breach of the February 23, 1968, nondisclosure agreement, the May 1968 prototype agreement, and the confidential relationship allegedly existing between E.D.S. and Sigma. In response to the patent claim asserted by E.D.S., Sigma denied infringement and as an affirmative defense alleged that the subject matter of the patent infringement claims were not such that were ordinarily protected by the patent laws because the ideas were not new, they were obvious to a person

having ordinary skill and computer technology, and they had been previously discovered by another person. Sigma went on to claim that all agreements it executed were the result of duress, coercion and undue influence on the part of E.D.S. towards Sigma, and that it was E.D.S., not Sigma, who first breached the May 1968 agreement.

Sigma then counterclaimed seeking actual damages of $8,228,000.00 for alleged violations of the Sherman and Clayton Acts on the part of E.D.S. These damages, alleged Sigma, resulted from E.D.S. forcing Sigma out of the portable terminal field and the computer services business by the temporary injunction issued by the state court. E.D.S. denied these allegations.

The district court, after a two week trial, submitted the case to the jury by means of 35 multipart interrogatories. The jury's answers, as was stated above, were partially favorable to Sigma and partially favorable to E.D.S. E.D.S. filed a motion for judgment notwithstanding the verdict and Sigma filed a motion for judgment based on the verdict. The trial court then sustained in part and overruled in part both motions.

REVIEW:

This court has made a thorough review of the entire proceedings in the trial court below and has further gone through a step-by-step examination of the jury's answers to the interrogatories as they relate to the evidence and testimony presented and as all of the above relates to the final judgment issued by the federal district court. We find that the only rational conclusion that can be justified by the record of this case below is that the trial court should in all respects be affirmed.

The district court did a thorough analysis of the answers submitted by the jury to the 35 multipart interrogatories. It was the conclusion of that court that the findings of the jury relating to the infringement of the patent and to the validity of the specific patent claims in question (4, 5 and 7 of the patent) were amply supported by the evidence. The conclusion of the jury, however, that E.D.S. had acted in bad faith in bringing this suit the trial court found not to be supported by substantial evidence and furthermore to be in conflict with the jury's findings that claim four mentioned above was valid. For that reason, the trial court disregarded the finding of bad faith against E.D.S. Our study of the record of the full proceedings below leave us in full agreement with the trial court. See, Stancill v. McKenzie Tank Lines, Inc. (5 Cir. 1974), 497 F.2d 529. See also, Boeing v. Shipman (5 Cir. 1959), 411 F.2d 365; Mohasco Industries, Inc. v. Barwick Mills, Inc. (5 Cir. 1965), 340 F.2d 319; Merry Manufacturing Co. v. Burns Tool Co. (5 Cir. 1965), 335 F.2d 239.

Count Two of the original complaint dealt with E.D.S.'s allegation that Sigma was in breach of the confidential relationship which existed between the two, and further dealt with E.D.S.'s allegation as to Sigma's carrying on unfair competition. The trial court noted that E.D.S. had two theories of recovery concerning Sigma's alleged violations of the contract obligations involved in the contracts of February and May, 1968. As to E.D.S.'s first theory, that of contract, the jury found that Sigma had disclosed and used for its own benefit information obtained and generated under these two agreements. The jury further found that Sigma was guilty of wilfully and maliciously using such information and should have to pay punitive damages. The jury awarded $1,000.00 for the contract breach and $7,000.00 in punitive damages. The trial court found that there was substantial evidence present to support the jury's finding of breach of the February 1968 agreement, but not of the May 1968 agreement. The trial court went on to reduce eventually the total actual damage award to $250.00, and the total of the punitive damage award against the defendants to $1,200.-00, this being the amount awarded by the jury under Count Two of the com-

plaint. As to the contract theory relating to the May 1968 agreement, the jury found that Sigma had not violated such an agreement in construction of a computer terminal unit and the trial court found such conclusion to be supported by substantial evidence and that E.D.S. should not receive any relief concerning that specific agreement. There can be no question but that the trial court was correct in all of the above actions. Stancill v. McKenzie Tank Lines, Inc., *supra*; Mohasco Industries, Inc. v. Barwick Mills, Inc., *supra*; Merry Manufacturing Co. v. Burns Tool. Co., *supra*.

It appears that the jury found as to Sigma's tort theory of recovery that E. D.S. had suffered actual damage due to the wilful and malicious disclosure on the part of Sigma of confidential information gained through its confidential relationship with E.D.S. The trial court was of the opinion that the jury's answers to the interrogatories were substantially supported by the evidence and furthermore that the jury's damage award mentioned above was correct. Under the tort theory the jury awarded $250.00 actual damage and $1,200.00 punitive damages.

Sigma counterclaims alleging that the restrictions contained in the May 1968 agreement between the parties providing that Sigma would not compete with E.D.S. while constructing an alpha-numeric data input terminal or by entering the computer business violate the federal antitrust laws. The jury found, however, that the agreement not to compete with E.D.S. by entering into the computer service business imposed a greater restraint upon interstate commerce than was necessary to protect E. D.S. The jury went on to find that the defendants had suffered sufficient business or property damage to entitle them to maintain the antitrust action and awarded $410,000.00 to cover the economic injury suffered. The trial court found that although there was substantial evidence to support Sigma having standing to bring the antitrust claim, there was not substantial evidence to support an award in any amount, there being no substantial evidence to support the finding of injury and damage. This court's examination and analysis of the evidence causes us to conclude that the trial judge was well within his discretion and used sound judgment in making such a ruling. Stancill v. McKenzie Tank Lines, Inc., *supra*. See also, Mohasco Industries, Inc. v. Barwick Mills, Inc., *supra*; Merry Manufacturing Co. v. Burns Tool Co., *supra*.

The decision of the district court, the memorandum opinion and the district court's order are in all respects correct and should be

Affirmed.